## STATE v. ROY SAUNDERS.

(Filed 11 January, 1957.)

**1. Criminal Law § 51a(2)—**

The unsupported evidence of an accomplice is sufficient to sustain a conviction in this State if it satisfies the jury of guilt beyond a reasonable doubt.

**2. Robbery § 3—**

Testimony of a State's witness to the effect that defendant joined in making plans for a robbery, furnished the perpetrators a pistol, gave his accomplices the name of the victim and was nearby when they induced the victim to go with them to a secluded spot in the victim's car, where they robbed him, together with incriminating admissions of defendant as to his meeting and being with the other conspirators, and corroborative evidence of the accomplice's testimony, *held* sufficient to be submitted to the jury in a prosecution of defendant for conspiracy to rob and for armed robbery.

**3. Criminal Law §§ 27, 31m: Evidence § 47g—**

It is competent for a witness to testify from her own knowledge gained from official maps over a period of years as travel counsel as to distances between important cities and towns in this and another state. Further, such matters are within common knowledge of which the courts may take judicial notice.

**4. Criminal Law § 78e(2)—**

Inadvertence of the court, in stating the contention of the State that the testimony of defendant should be scrutinized in the light of his interest, that defendant "still maintains some hope that he may not be" convicted, will not be held for prejudicial error in the absence of apt objection when the jury could not have understood the instruction as anything more than a statement of the State's contentions, the misstatement not being sufficient to take the matter out of the general rule that a misstatement of contentions must be brought to the court's attention in apt time.

**5. Appeal and Error § 24—**

    As a general rule, objections to the statement of contentions and review of the evidence must be made before the jury retires or they are deemed to have been waived.

JOHNSON, J., not sitting.

APPEAL by defendant from *Sharp, S. J.,* 6 February, 1956 Term, FORSYTH Superior Court.

Criminal prosecution upon two bills of indictment, consolidated and tried together. The bill in case No. 287 charged the defendant with the robbery of B. B. Price by the use of firearms, and taking from him the sum of $2,000 in cash and an automobile of the value of $3,200.. The bill in No. 356 charged the defendant together with "Walter Wilson, *alias* Walter Kraeuter," and Domenico Calabria with conspiracy to rob B. B. Price of the money and automobile described in the indictment for the substantive offense. The defendant entered a plea of not guilty to both charges. "Walter Wilson, *alias* Walter Kraeuter," entered a plea of *nolo contendere* to the conspiracy count and also to a bill charging him individually with the substantive offense. The offenses are alleged to have occurred near Winston-Salem on 28 July, 1951.

Kraeuter was the principal witness for the State. The substance of his testimony follows: Prior to July, 1951, the witness and Domenico Calabria worked as stevedores on the same pier in New York harbor. On a Monday morning the latter part of July, 1951, as a result of a telephone call from one Waldemaier, a friend of Kraeuter's, in Washington, D. C., Kraeuter and Calabria left New York by train, arrived in Washington in the early afternoon. They were met at the station by Waldemaier who immediately drove them to the home of Roy Saunders on Trinidad Avenue. After the introductions the parties went to a basement room in the home of Saunders, who proposed that Kraeuter and Calabria accompany him to Winston-Salem, North Carolina, for the purpose of robbing a farmhouse near Winston-Salem in which the owner kept a safe and a large sum of money. Saunders delivered to Kraeuter a Luger pistol to be used in the robbery.

Saunders had lived and worked in Winston-Salem, dealt in second-hand automobiles there, and, in addition to his home in Washington, also maintained an apartment in High Point, North Carolina. On that same afternoon or early evening the witness (Kraeuter), Calabria, and Saunders left Washington together by bus and arrived in Winston-Salem early Tuesday morning. Saunders took the witness and Calabria to the Zinzendorf Hotel where he later picked them up and drove them out to a place about one-half mile from the house to be robbed, for the purpose of having them look over the place. Children were playing

about the yard. Carpenters were at work on the house. When Saunders came back to pick them up they told him they did not like the looks of the set-up and they wanted to go back to New York; that they were broke. Saunders gave them ten or twenty dollars, told them he expected to have a car for delivery in New York soon. They planned to ride back with him.

Calabria said he needed some money to take to his wife in order to pacify her about his absence. Whereupon, Saunders suggested there might be an easy hold-up job available a little later on. He said he knew of a second-hand dealer in automobiles who usually carried about $2,000 in cash. On Saturday morning, 28 July, 1951, Saunders drove them to a filling station near a parking lot and pool room on South side and told them to inquire for B. B. Price, propose to buy a second-hand car, ask for a demonstration, and while out, rob him, tie him up, and return to the parking lot where he (Saunders) would pick them up. They would divide the money and he would take them to New York.

Late in the afternoon the witness and Calabria met Price. While testing the car, Calabria drove. Price sat by him in the front seat and the witness sat in the rear seat. Calabria asked to test the car on a rough, dirt road, and after driving to a place where no houses were in sight, Kraeuter held the pistol on Price, told him to hand over his money and he would not be harmed. Price resisted and Kraeuter hit him several times with the pistol, inflicting somewhat serious head wounds. Price feigned unconsciousness and the two carried him to the bushes near the road, left him, and as they drove off they saw him running toward a delivery truck in a nearby field. They attempted to get away in the car but drove into a dead-end road near a fish pond. In attempting to turn around, the car got stuck in the mud. They abandoned it, walked through the woods and on the railroad track nearly all night, and arrived in Lexington early Sunday morning. They divided $1,480 taken from Price, and separated. Kraeuter went to Washington by train. On Tuesday, Kraeuter called Saunders in his home in Washington and was told to come to his house. Saunders knew all about the hold-up and said Calabria had been caught. The witness then gave Saunders $250 of the $740 he got from Price.

B. B. Price testified he had not known Kraeuter or Calabria but on 28 July, 1951, just before the hold-up, these two men came to the car lot and inquired for B. B. Price. A Mr. Hatcher pointed out the witness. His story of the hold-up was essentially the same as that told by Kraeuter.

After the defense attorney cross-examined Kraeuter in an effort to break down his story, the State offered W. C. Burton, a police officer of Winston-Salem, for the purpose of corroborating Kraeuter. The officer was permitted to testify to the story of the robbery as told to

him by Kraeuter, which was essentially the same as that told by Kraeuter on the stand. The court instructed the jury that the evidence of the officer was not substantive evidence but was offered for the purpose of corroborating the witness Kraeuter and for no other purpose.

The State offered evidence that on the afternoon of the robbery the defendant Saunders was at or near the garage and parking lot where Kraeuter and Calabria met Price. Two witnesses testified that Saunders on that afternoon had made inquiry for Price.

The defendant testified and denied any participation in, or knowledge of a plan to rob a farmhouse or B. B. Price. He denied meeting with Kraeuter and Calabria on Saturday morning, 28 July, as testified to by Kraeuter. He testified and offered evidence of witnesses that he was in Abingdon, Virginia, on his way to Charlotte, North Carolina, in the late afternoon of the 27th, and that he was in Charlotte in the morning of the 28th—the day Price was robbed.

On cross-examination, however, he admitted he had a house in Washington in July, 1951; that he knew Waldemaier and at one time they jointly owned a truck; and that Waldemaier brought Kraeuter and another man by the defendant's house on Trinidad in Washington; that he had previously known Kraeuter as Walter Ryan; that Kraeuter wanted to go to the restroom and he took him to the basement; that no discussion took place there and no plans were made for any hold-up. The defendant admitted Waldemaier took the defendant, Kraeuter and the other man to the bus station and that they bought tickets and rode the bus together to Winston-Salem. The defendant admitted that on the day of the robbery he inquired for B. B. Price at the filling station on South side; that he knew of some boys who wanted to buy a car and he recommended they contact Price. Later that evening he found out Price had been assaulted and robbed.

In rebuttal, the State offered Miss Nellie Caldwell who testified that she had been travel counsel for the Winston-Salem Automobile Club for 18 years; and over objection she was permitted to testify as to the distances between Bristol, Virginia, and Winston-Salem, North Carolina, and between Bristol and Charlotte. She said she had never measured these distances but that she got her information from official maps. The defendant objected to the testimony on the ground she had not made the measurements herself. The defendant offered a number of witnesses who testified as to his good character.

At the close of all the evidence the defendant renewed his motion to dismiss and excepted to the refusal of the court to grant it. The jury convicted the defendant on both charges. From a judgment that the defendant be confined in the State's prison for 10 years in each case, the sentences to run concurrently, the defendant excepted and appealed.

*George B. Patton, Attorney General, and T. W. Bruton, Assistant Attorney General, for the State.*
*H. Bryce Parker and Wesley Bailey for defendant, appellant.*

HIGGINS, J.   The State's evidence relative to the plans to commit the offenses charged and the means by which they were carried out consisted of the testimony of Kraeuter, the accomplice, and of B. B. Price, the victim.   However, the defendant, on cross-examination, made many admissions tending to support Kraeuter's story.   He admitted he and Waldemaier had been in partnership; that Waldemaier took Kraeuter and another man to the defendant's home in Washington on Monday preceding the hold-up; that the defendant took Kraeuter to his basement (where Kraeuter testified the plans were made).   He admitted riding the bus with Kraeuter and the latter's companion from Washington to Winston-Salem as Kraeuter testified.   He admitted making inquiry for Price at the Southside Poolroom and Filling Station just before Kraeuter and Calabria took Price out to rob him.   While the story told by Kraeuter and that told by the defendant are in harmony in many points, they are in conflict with respect to the defendant's participation in the plan to rob Price or to commit any other violation of the law.   The defendant contends, therefore, Kraeuter's story of the defendant's participation is unsupported and the State's evidence was insufficient to justify conviction.

The courts of the several states are not in agreement as to whether the testimony of an admitted accomplice is sufficient to convict.   Our Court, however, adheres to the rule that such evidence, even if unsupported, is sufficient if it satisfies the jury of guilt beyond a reasonable doubt.   *S. v. Tilley,* 239 N.C. 245, 79 S.E. 2d 473, citing cases.   Therefore, the defendant's motions to dismiss were properly overruled.

The defendant assigns as error the admission of the evidence of Miss Caldwell that the distance from Bristol, Virginia, to Charlotte, North Carolina, and from Bristol to Winston-Salem is the same—157 miles; and from Charlotte to Winston-Salem is 79 miles.   These facts were within her knowledge obtained over a period of 18 years as travel counsel and her testimony with respect thereto was properly admitted.   *Jordan v. Glickman,* 219 N.C. 388, 14 S.E. 2d 40.   However, we think the court should have taken judicial notice of these distances without proof.   In the early case of *Furniture Co. v. Express Co.,* 144 N.C. 639, 57 S.E. 458, decided in 1907, this Court said: ". . . It is generally held that the courts will take judicial notice of the placing of the important towns within their jurisdiction and especially of county seats and their accessibility by railroads connecting them with trunk lines of the country; and there is well considered authority to the effect that courts may also take such notice of the distance to prominent business centers

of other states, etc." A much stronger case for taking such notice can be made out today when almost every town in the country is connected by a ribbon of concrete or asphalt over which a constant stream of traffic flows. Every filling station has maps available to the traveler without charge. Highway signs at road crossings give both distance and direction. In fact, so complete and so general is the common knowledge of places and distances that the court may be presumed to know the distances between important cities and towns in this State and likewise in adjoining states. Am. Jur., Vol. 20, sec. 57, p. 80; 32 C.J.S., sec. 730; Wigmore on Evidence, 3rd Ed., Vol. 9, sec. 2575 (see pocket supplement, 1955); *Chappell v. Stallings,* 237 N.C. 213, 74 S.E. 2d 624; *Mallard v. Housing Authority,* 221 N.C. 334, 20 S.E. 2d 281; *Hart v. Commonwealth,* 131 Va. 726. The objection to the testimony of Miss Caldwell is without merit.

Exceptions were interposed to parts of the charge. The court reviewed the evidence for the State and then gave the State's contentions arising on the evidence. Likewise, the court reviewed the defendant's evidence and gave his contentions arising on the evidence. In reviewing the State's evidence, the Court said:

"The State says and contends that Mr. Kraeuter has not denied that he has interest in this case, but the State says and contends that the defendant is just as much interested in the outcome of this case and even more so than the witness Kraeuter; that Kraeuter has plead guilty, or has entered a plea of *nolo contendere,* which, so far as punishment is concerned, amounts to the same thing; that the defendant has not yet been convicted; (that he still maintains some hope that he may not be, so the State says and contends that your scrutiny of the defendant's testimony should be made in the light of his present very substantial interest in this case.)"

The defendant assigns as error that portion of the statement in parenthesis. The clause objected to was a part of the court's recital of the State's contentions. No objection was interposed, and no request was made for correction. The court had fully charged the jury to scrutinize the evidence of Kraeuter for the reason that he was an admitted participant in the commission of the crimes charged. It is difficult to see how the jury could have understood the statement objected to as anything more than a contention on the part of the State. The court concluded the charge with the following admonition to the jury:

"I have tried not to stress one side's contentions in this case more than the other, but you understand, of course, that one person cannot think of everything that can be said for either the State or · the defendant, and I have made no attempt to time my statement

of the contentions. I simply say to you that if I have stressed one side more than the other, I am unconscious of having done so; I have not meant to, and you will attach no importance to any apparent emphasis. It is your duty to give both the State and the defendant the benefit of any reasonable contention which arises in its behalf or his behalf, in your deliberations before you arrive at this verdict."

Before the jury retired, attorneys for the State and the defendant indicated that the charge covered their contentions. As a general rule, objections to the statement of contentions and to the review of the evidence must be made before the jury retires or they are deemed to have been waived. *Peek v. Trust Co.*, 242 N.C. 1, 86 S.E. 2d 745; *Moore v. Bezalla*, 241 N.C. 190, 84 S.E. 2d 817; (for further authorities, see Index to North Carolina Reports, Appeal and Error, sec. 24, footnote 289.) The part of the charge objected to does not come within the exceptions to the general rule.

A review of all exceptive assignments fail to reveal error of law committed in the trial.

No error.

JOHNSON, J., not sitting.