STATE v. WILLIAM WOODROW TERRELL.

(Filed 12 January, 1962.)

1. **Conspiracy §§ 3, 6—**

Since the agreement to do an unlawful act constitutes the offense of conspiracy, where the evidence tends to establish an agreement to commit larceny by trick from a named person, the fact that the evidence may tend to show that the title and the constructive possession of the property was in another when the conspiracy was consumated, does not warrant nonsuit for variance.

2. **Conspiracy § 3—**

Conspiracy to commit a felony is a felony, and where the evidence discloses a conspiracy to commit larceny by trick, with nothing to indicate that the conspirators intended to stop before the value of the property passed $100.00, the fact that the evidence may fail to disclose that the value of the property actually taken pursuant to the conspiracy exceeded the value of $100.00, does not reduce the conspiracy to commit the offense to a misdemeanor.

3. **Criminal Law § 101—**

The unsupported testimony of an accomplice is sufficient to support conviction in this State if it satisfies the jury of guilt beyond a reasonable doubt.

4. **Embezzlement § 1; Larceny § 1—**

The fact that the agent of the owner of property participated in a conspiracy to commit larceny of the property by trick does not change the purpose of the conspiracy from larceny to embezzlement or false pretense.

APPEAL by defendant William Woodrow Terrell from *Sharp, S.J.,* April 1961 Term, WAKE Superior Court.

This criminal prosecution was tried upon a bill of indictment which charged that on October 1, 1959, "James Donald Mealer and William Woodrow Terrell, and others by name to these jurors unknown, . . . did unlawfully, wilfully and feloniously combine, confederate, agree, and conspire together to unlawfully, wilfully and feloniously take,

steal and carry away leaf tobacco of the value of several hundred dollars, the property of Monk-Henderson Tobacco Company . . ." In addition to the count charging the conspiracy, the indictment contained eight counts charging James Donald Mealer and William Woodrow Terrell with the larceny of different lots of tobacco, the property of Monk-Henderson Tobacco Company. The value of each lot was separately fixed, ranging from $70.00 to $300.00. The bill specified the exact poundage of each lot and fixed the date of the taking: one lot on October 19, 1959; three lots on September 19, 1960; and four lots on September 25, 1960.

At a prior term of court the defendant Mealer entered a plea of guilty to all counts in the bill. The court imposed a prison sentence of not less than four nor more than six years. He was brought from the State's prison and testified as a State's witness. His evidence tended to show the following: In 1957 he was office manager of Monk-Henderson Tobacco Company at Wendell. During the 1957 market Jack Simmons introduced Mealer and the defendant Terrell who at that time was a pinhooker — that is, an independent buyer who attended sales, bid off certain lots of tobacco which he hoped to recondition and resell at a profit.

As a result of talks between Jack Simmons and Mealer, the latter called Terrell at his home in Wendell: "I told him (Terrell) that at that particular time, like I had explained to Jack Simmons, that Monk-Henderson Tobacco Warehouse or the Wendell market were not buying a sufficient amount of tobacco that any operation could be carried on there. He said he understood that. I told Terrell that if anything developed at a later day I would let him know . . . I next saw him in 1958 after he came back from the burley market in Kentucky. . . . I told him I still did not know anything about the tobacco situation — that the men had not come back from Europe yet.

" . . . I saw the defendant Terrell during the tobacco season in Wendell in 1959 . . . He asked me had I found out anything about the coming season . . . whether we (Monk-Henderson) were going to buy tobacco in quantity. . . . I told him I thought we were . . . A few days later after the market opened . . . told him it looked like the volume of tobacco there would be enough to justify that we could do business there that year. I asked him was he sure he understood how the operation was supposed to work and he said he thought he did." The arrangement was: "That after the tobacco was sold on the warehouse and knocked out to Monk-Henderson, . . . and the clip man had come along behind the sellers and recorded on the farmer's sheet the price the tobacco is sold for and the name of the company to whom it was sold, etc."

The plan contemplated taking advantage of the market practice which was known to the parties. In the usual course, tickets in triplicate sheets are made out in advance showing the grade, the weight, and the name of the grower. These tickets are placed on each lot or basket of tobacco in the line of sale. Entries on the top sheet are reproduced on the other sheets. When the tobacco is sold, the price and the name of the purchaser are entered. The top sheet goes to the warehouse; the second sheet to the purchaser, and the bottom sheet to the grower. The tobacco goes to the purchaser who pays the warehouse, which in turn pays the grower. If, however, the grower refused to sell at the price bid, no further entries are made on the tickets, but the grower turns them upside down on the lot, repossesses, and withdraws the tobacco from the sale.

The method of carrying out the plan involved substantially this variation from the regular marketing procedure: When Monk-Henderson was the successful bidder, the tickets were made out in the usual way — one copy for the warehouse, one for Monk-Henderson, and the third for the grower. Terrell, however, was to place a bogus set of tickets upside down, indicating the lot was unsold. He was to remove it, sell it and split with Mealer. According to the intended result, Monk-Henderson would pay the warehouse for the tobacco according to its bid. The grower would collect from the warehouse, but Terrell rather than the purchaser (Monk-Henderson) would surreptitiously remove the tobacco and sell it. For fear of detection, the purpose was to take a limited amount from Monk-Henderson's purchases when the volume was heavy. Mealer testified he received approximately $380.00 as his part of the take.

There was much evidence both by the State and the defendant relating to the individual lots of tobacco involved in the substantive offenses charged in the indictment. The defendant offered evidence of his good character, though he did not testify. At the close of all the evidence the court directed a verdict of not guilty to counts 8 and 9 in the indictment and overruled the motion to dismiss the other counts. The jury returned a verdict of guilty on the conspiracy count and not guilty on the six counts submitted charging substantive offenses. From the judgment of imprisonment of not less than three nor more than five years, the defendant appealed, assigning numerous errors.

*T. W. Bruton, Attorney General, G. A. Jones, Asst. Attorney General for the State.*

*Thomas A. Banks, Philip R. Whitley, Hill Yarborough, John F. Matthews for defendant appellant.*

HIGGINS, J.   On this appeal we are concerned with assignments of error relating to the formation of the conspiracy — the making of the plan charged in the indictment. "As soon as the union of wills for the unlawful purpose is perfected the offense of conspiracy is completed." *State v. Knotts,* 168 N.C. 173, 83 S.E. 972. "The conspiracy is the crime and not its execution." *State v. Davenport,* 227 N.C. 475, 42 S.E. 2d 686. Efforts, successful or otherwise, of the parties to carry out their unlawful agreement involve only substantive offenses. Any error with respect thereto in this case was rendered harmless by the verdict.

The defendant urges the conviction on the conspiracy count should be set aside and the judgment based thereon should be reversed because of a fatal variance between the charge and the proof. He argues in his brief, "To make out a case the State had to prove that these circumstances (evidence relating to the manipulation of the tickets at the sale) placed ownership and possession in the named company before Terrell moved the tobacco. Otherwise his act would disturb possession of the warehouse or the farmer — not the named company — and the case would fail for a variance between the indictment and the proof." He argued at length, citing many cases as to when in auction sales title passes and whether at any particular step in the sales procedure the taking of the property would constitute larceny, false pretense, or embezzlement. ". . . (That) the court erred in failing to instruct the jury the burden (was) on the State of proving beyond a reasonable doubt that the value of the tobacco intended to be stolen would amount to more than $100 at the time of the taking, otherwise the evidence would show only a misdemeanor."

The argument fails to distinguish between the making of the plan and its execution. "It is not necessary for the indictment for conspiracy to describe the subject crime with legal and technical accuracy." *State v. Blanton,* 227 N.C. 517, 42 S.E. 2d 663. The conspiracy in this case was prospective. It was a part of the plan that the parties were to wait for a favorable opportunity to carry it out.

The conspirators knew Monk-Henderson Tobacco Company would buy a substantial amount of tobacco on the Wendell market. How much they would be able to pilfer by manipulating the sales tickets they, of course, did not know. Certainly there is nothing to indicate they intended to stop before the value passed $100.00 and keep the larceny within the misdemeanor class. A conspiracy to commit a felony is a felony. *State v. Abernethy,* 220 N.C. 226, 17 S.E. 2d 25.

The hub of the State's case was the testimony of Mealer. Other bits of supporting evidence tend to add to the picture's dark overtone. The defendant did not testify. However, he introduced rather impressive evidence of his good character. Jack Simmons, in on the preliminaries

and now serving time for "tobacco trouble" in Robeson County, did not testify. The State's principal witness was an admitted accomplice. Some jurisdictions require corroboration of such evidence in order to support a conviction. This Court, however, follows the rule that such evidence, even if unsupported, is sufficient if it satisfies the jury of guilt beyond a reasonable doubt. *State v. Saunders,* 245 N.C. 338, 95 S.E. 2d 876; *State v. Tilley,* 239 N.C. 245, 79 S.E. 2d 473.

We have quoted such facts and discussed such legal questions only as relate to the count in the bill upon which the defendant was convicted. The evidence was sufficient to show that Mealer and Terrell formed a conspiracy to steal tobacco by switching tickets enabling them to take and remove as unsold tobacco sold to Monk-Henderson Tobacco Company. The scheme contemplated larceny by trick. The participation of the owner's agent did not change the purpose from larceny to embezzlement or false pretense. The exceptive assignments relating to the conspiracy charge are not sustained on this record. In the trial and judgment below, we find

No error.