STATE OF NORTH CAROLINA v. JOSEPH LEE HAMM

No. 15

(Filed 5 March 1980)

1. **Criminal Law §§ 50, 73.2 — possible charge against defendant — no opinion on question of law — no hearsay**

A State's witness in an armed robbery and murder case was not permitted to express an opinion on a question of law in testifying that he had only been charged with armed robbery but that he knew he could have been charged with murder where the witness was in effect testifying that his testimony was in no way affected by the State's decision not to try him for murder, and the purpose of the testimony was to establish the credibility of the witness. Furthermore, the fact that the witness's knowledge of the potential murder charge may have been based on the out-of-court declarations of law officers did not render his testimony inadmissible since he was not testifying as to the truth of these declarations but was testifying as to his awareness that he could have been charged with murder, and this constituted a permissible non-hearsay use of out-of-court declarations.

**2. Criminal Law § 132— motion to set aside verdict—discretion of court**

    Motions to set aside the verdict and for a new trial based upon insufficiency of the evidence are addressed to the discretion of the trial court, and refusal to grant them is not reviewable on appeal in the absence of abuse of discretion.

**3. Criminal Law § 106.5— accomplice testimony—sufficiency for conviction**

    The unsupported testimony of an accomplice is sufficient to convict if it satisfies the jury beyond a reasonable doubt of the guilt of the accused.

**4. Homicide § 21.7; Robbery § 4.3— second degree murder—armed robbery—sufficiency of evidence**

    Testimony by an accomplice and circumstantial evidence which coincided with and corroborated the accomplice's testimony supported jury verdicts finding defendant guilty of second degree murder and armed robbery.

DEFENDANT appeals from judgments of *Fountain, J.,* 24 September 1979 Session, CARTERET Superior Court.

Defendant was tried on separate bills of indictment charging: (1) first degree murder and (2) armed robbery of Eleanor B. Arthur on 12 July 1979. In the murder case, the State placed defendant on trial for second degree murder only.

The State offered the testimony of Leo Sutton tending to show that on the evening of 12 July 1979 the witness Sutton, defendant and Ronald Bryant were together at Sutton's house. Defendant suggested they could make some quick money by robbing some stores. Defendant said he could get a gun from his "granddaddy" so the three drove to the home of Fred Simmons, where defendant entered the house from the rear, opened the front door and admitted the other two. They found a shotgun and decided to reduce the size of the gun so it would look like a pistol. The three men then went to Sutton's house where they obtained a hacksaw. They went to a baseball park in Bogue, North Carolina, where they sawed off a portion of the barrel and a portion of the stock and threw those parts of the gun into the woods. They went to a night spot and later returned to Sutton's house to change tires on Sutton's car. Ronald Bryant and defendant left and defendant later returned alone. He told Sutton that he knew a Mrs. Arthur who had money and that all Sutton had to do "was to take him up there and drop him off." Sutton then drove defendant to the vicinity of Mrs. Arthur's home and store. Defendant got out of the car and instructed Sutton to drive about one-half

mile down the road, turn into a dirt road and wait. Sutton drove to the agreed upon destination and defendant headed toward Arthur's store, taking the loaded gun with him.

Sutton further testified that defendant was gone about fifteen or twenty minutes and then came running down the road. When he got to the car, he said "go, go, because I blowed her heart out." They jumped in the car and left. Defendant said he had strangled her and then shot her.

They drove to a baseball field where Sutton threw the gun into the woods. While riding along, defendant displayed the money he had taken. It was in a blue or green money bag with a zipper on it. The next day defendant took two hundred to two hundred fifty dollars out of the bag and gave it to Sutton. Later that day they went to Havelock and bought a motorcycle for seven hundred dollars, paying for it with Mrs. Arthur's money.

The motorcycle dealer verified the sale of the motorcycle at trial but said the purchase price was six hundred fifty dollars.

Further evidence tended to show that on the morning of 13 July 1979, S.B.I. Agent Deans went to Mrs. Arthur's home and found her dead body in her bedroom clad only in a three-quarters length gown. She had been shot in the chest. There was a wound two inches in diameter in the victim's chest and damage to the heart was clearly visible. The County Medical Examiner also found evidence that blood had been running from the victim's nose.

The discarded portions of the shotgun were found in the woods near the baseball field to which Sutton guided the officers. The hacksaw was delivered by Sutton to the officers.

Fred Simmons testified he was married to a woman who raised defendant and that defendant called him "Fred", not granddaddy. Simmons stated his house had been entered some time in July and that a shotgun had been taken along with some shells.

The jury convicted defendant of second degree murder and armed robbery and he was given a life sentence in each case, to run consecutively. He appealed to the Supreme Court, assigning errors discussed in the opinion.

*Rufus L. Edmisten, Attorney General, by Ben G. Irons II, Assistant Attorney General, for the State.*

*Glenn B. Bailey, Attorney for Defendant-Appellant.*

HUSKINS, Justice.

[1]   Leo Sutton testified that he was under arrest for armed robbery and had not been charged with murder. Over objection, he was permitted to say that he knew he could have been charged with murder. Defendant contends that Sutton, who was not learned in the law, was erroneously permitted to express an opinion as to what crimes he might be charged with as a result of his participation in the robbery and murder of Mrs. Arthur. This contention is without merit. When the record is read contextually, it is clear that Leo Sutton was not being asked to give an opinion. Rather, he was being asked whether he had been informed by the authorities that he could have been charged with other crimes. This is clear from the testimony immediately following Sutton's assertion that he knew he could have been charged with murder: "No one promised me anything to testify, and no one has told me what to say and no one has threatened me." In effect, Sutton was testifying that his testimony was in no way affected by the State's decision not to charge him with murder. Thus, the purpose of the testimony in question was to establish the credibility of the witness, not to elicit an opinion on a question of law.

The fact that Sutton's knowledge of the potential murder charges may have been based on the out-of-court declarations of law enforcement officials does not render his testimony inadmissible. Sutton was not testifying as to the truth of these declarations; rather, he was testifying as to his awareness that he could have been charged with murder. This constitutes a permissible non-hearsay use of out-of-court declarations. *State v. Holmes,* 296 N.C. 47, 249 S.E. 2d 380 (1978). *Accord,* 1 Stansbury, N. C. Evidence, § 149 at pp. 469-70 (Brandis Rev. 1973). In any event, review of the record indicates that defendant's objection to the testimony in question was not timely made. The objection was not made until the question was put and the answer given. Only then did defendant object and move to strike the answer. This came too late. Accordingly, defendant has waived his right to assign as error the admission of the testimony in question. See, 1 Stans-

bury, supra, § 27 at p. 69 and cases cited therein. Defendant's first assignment of error is overruled.

Defendant assigns as error the denial of his motions to set aside the verdict and for a new trial based upon insufficiency of the evidence.

[2] Motions to set aside the verdict and for a new trial based upon insufficiency of the evidence are addressed to the discretion of the trial court and refusal to grant them is not reviewable on appeal in the absence of abuse of discretion. *State v. Vick,* 287 N.C. 37, 213 S.E. 2d 335, *cert. dismissed,* 423 U.S. 918 (1975); *State v. Lindley,* 286 N.C. 255, 210 S.E. 2d 207 (1974). Review of the record indicates there was substantial evidence to take the case to the jury on second degree murder. Hence, no abuse of discretion has been shown.

[3, 4] It was stipulated that the cause of Eleanor B. Arthur's death was a shotgun wound to her chest. There was plenary, competent evidence that defendant inflicted that wound. Thus, the evidence is abundantly sufficient to repel a motion for nonsuit and to carry the case to the jury and to support the verdicts rendered. Defendant challenges the testimony of his accomplice Leo Sutton, but the law in this jurisdiction is settled that the unsupported testimony of an accomplice is sufficient to convict if it satisfies the jury beyond a reasonable doubt of the guilt of the accused. *State v. Partlow,* 272 N.C. 60, 157 S.E. 2d 688 (1967); *State v. Terrell,* 256 N.C. 232, 123 S.E. 2d 469 (1962); *State v. Saunders,* 245 N.C. 338, 95 S.E. 2d 876 (1957). Moreover, the testimony of Sutton is not entirely unsupported. To the contrary, there is much circumstantial evidence which coincides with, dovetails, and corroborates Sutton's testimony.

The evidence of defendant's guilt of murder in the first degree is strong and convincing. He is the beneficiary of an election by the State to try him only for murder in the second degree. No prejudicial error has been shown in his trial. Hence, the verdict and judgments pronounced will not be disturbed.

No error.