IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-590

No. COA20-758

Filed 2 November 2021

Buncombe County, No. 18 CRS 723-24; 18 CRS 83834; 18 CRS 83836

STATE OF NORTH CAROLINA,

v.

DOMINIQUE JAWANN EDDINGS, Defendant.

Appeal by Defendant from judgments entered 20 September 2019 by Judge J. Thomas Davis in Buncombe County Superior Court. Heard in the Court of Appeals 8 June 2021.

*Attorney General Joshua H. Stein, by Assistant Attorney General Jonathan R. Marx for the State.*

*W. Michael Spivey for Defendant-Appellant.*

WOOD, Judge.

¶ 1    Defendant Dominique Jawann Eddings ("Defendant") appeals convictions of possession with intent to sell or deliver fentanyl, possession of fentanyl, possession of a firearm by a felon, and intentionally keeping or maintaining a building for keeping or selling a controlled substance. Prior to trial, Defendant moved to suppress evidence obtained during a search of his residence. The trial court denied the motion, finding probable cause. On appeal, Defendant challenges the denial of his motion to

suppress; the denial of his motion to dismiss the charge of possession of a firearm by a felon; jury instructions given regarding the distinction between actual and constructive possession; and an alleged sentencing error. After careful review, we reverse the order denying Defendant's motion to suppress and grant Defendant a new trial.

## I.    Factual and Procedural Background

¶ 2         In 2018, the Buncombe County Sherriff's Office believed Robert Jones ("Jones") was selling narcotics in Leicester, North Carolina.  Law enforcement had a confidential informant make a controlled purchase of narcotics from Jones at Jones's residence.

¶ 3         When the confidential informant successfully purchased fentanyl from Jones, law enforcement asked the informant to complete a second controlled purchase. Jones told the informant that "[h]e didn't have narcotics. He would have to go get narcotics."  Law enforcement began surveilling Jones and observed Jones travel to a residence located at 92 Gillespie Drive.  Jones remained at 92 Gillespie Drive for less than thirty minutes before meeting the informant at a nearby convenience store and providing narcotics to the informant.  After observing this, law enforcement formed an opinion that Jones was procuring narcotics from 92 Gillespie Drive.

¶ 4         On April 19, 2018, Buncombe law enforcement officers arranged for the informant to purchase drugs from Jones for a third time.  Prior to the scheduled

controlled purchase, a surveillance team followed Jones[1] as he traveled to 92 Gillespie Drive. Jones remained at the residence for approximately ten minutes. Approximately two minutes after Jones left the residence, law enforcement attempted to perform a traffic stop. However, Jones did not stop his vehicle when law enforcement officers activated their emergency lights. While pursuing Jones, law enforcement officers "could see him eating something." Officers "finally got him stopped at [a] gas station" and noticed "that there was something in his beard that looked like white powder." It was determined later that Jones ingested narcotics.

¶ 5 Once law enforcement detained Jones, Detective Jason Sales ("Detective Sales") of the Buncombe County Sherriff's Office "wrote a search warrant" for the residence Jones had recently left. At the time, law enforcement did not know who resided at 92 Gillespie Drive, but Detective Sales "believe[ed] that [the house] [was] where [] Jones purchased his narcotics from, that this was, in fact, his source of supply." "[A] search warrant was drafted, approved by a supervisor, [and] taken to a magistrate."[2]

¶ 6 The search warrant application was comprised of six pages, and included: a

---

[1] There is no evidence in the record that Jones lived at 92 Gillespie Drive.

[2] A review of the transcript does not reveal that Detective Sales spoke with the magistrate. The transcript does not reveal who took the search warrant to the magistrate or if the officer who did so detailed law enforcement's surveillance of Jones to the issuing magistrate. Thus, we presume that the issuing magistrate only considered the search warrant affidavit in determining probable cause existed.

broad description of items to be seized, including "any and all weapons," "any and all

items of personal property," and any item that "could show information related to the

manufacture, sale or distribution of controlled substances"; a list of three statutes

law enforcement believed were violated; a description of the residence and directions

from the Buncombe County Sheriff's Office to 92 Gillespie Drive; and an one-and-a-

half page affidavit prepared by Detective Sales. The search warrant affidavit

provided, in relevant parts,

> While surveilling Jones, BCAT Agents were also able to follow him to 92 Gillespie Drive . . . , also believed to be the Source of Supply for Jones. On this date . . . BCAT Agents were able to once again surveille Jones and follow him to the 92 Gillespie Drive address. With the help of the Buncombe County Sheriff's Community Enforcement Team (SCET), BCAT Agents were able to advise SCET when Jones would be leaving the residence of 92 Gillespie Drive and advised them the direction Jones would be traveling. . . . Jones was placed under arrest and a subsequent search for suspected heroin/fentanyl was conducted. In the search of the vehicle Deputies were able to locate [drugs]. . . . Based on my training and experience, and the facts as set forth in this affidavit, I believe that in the residence of 92 Gillespie Drive, there exists evidence of a crime and contraband or fruits of that crime, to include the use and sale of illegal narcotics. With the information of the officers and confidential sources involved in this case, the affiant respectfully requests of the court that a search warrant be issued.

The search warrant was executed that same day.

At the time the search warrant was executed, several individuals — including

Defendant's cousin, Defendant's fiancé, an infant, and a teenaged girl — appeared to be either living at or visiting the residence. The search revealed digital scales, fentanyl, inositol powder, and a safe containing money and documents belonging to Defendant. Officers recovered a handgun with a holster and magazine from Defendant's bedroom. Officers further recovered magazines and ammunition from various places inside the residence. The following day, Detective Sales obtained a second search warrant for the residence. During the second search, officers found a coffee can in the backyard containing packages of fentanyl.

¶ 8          Subsequently, on January 7, 2019, Defendant was indicted for possession with the intent to sell or deliver a Schedule II controlled substance, possession of fentanyl, possession of a firearm by a felon, and intentionally keeping or maintaining a dwelling for keeping or selling a controlled substance. On September 16, 2019, Defendant moved to suppress all evidence obtained during the searches of 92 Gillespie Drive, arguing the issuing magistrate "erred in finding probable cause to issue the search warrant to search Defendant's residence located at 92 Gillespie Drive." Defendant argued that the search warrant lacked sufficient probable cause and violated Defendant's rights under the Fourth and Fourteenth Amendments to the United States Constitution. Defendant's motion was denied. In its order denying Defendant's motion to suppress, the trial court made findings of fact which Defendant challenges. The relevant findings of fact are as follows:

2. The affidavit attached to the warrant is signed by Detective Jason B. Sales. In the affidavit he among other things asserts . . . [t]hat the task force with the aid of a confidential source of information recently purchased heroin/fentanyl from . . . Jones; [t]hat agents with task force were able to conduct surveillance of Mr. Jones on several occasions . . .; [t]hat during the surveillance they were also able to follow Mr. Jones to 92 Gillespie Drive, Leicester, NC, and based on their observations it was concluded that the source of supply of narcotics to Mr. Jones was coming from the property located at 92 Gillespie Drive . . .; [t]hat on April 19, 2018 the day of the application for the search warrant agents were again conducting surveillance on Mr. Jones and he again went to the property located at 92 Gillespie Drive; [t]hat immediately upon Mr. Jones leaving this property law enforcement followed Mr. Jones and based on other probable cause they quickly pulled Mr. Jones over and stopped him; [u]pon stopping Mr. Jones it was noted that he was ingesting a white powdery substance; . . . and [t]hat based on the training and experience of the detective he opined that there existed at the residence at 92 Gillespie Drive from which Mr. Jones had just left evidence of crime indicating the use and sale of illegal narcotics. This Court finds, as the magistrate did, the foregoing facts based on the affidavit attached to the search warrant.

5. . . . The affidavit supports a drug dealer frequenting the particular residence to be searched, and that the drug dealer was found with a substantial amount of drugs immediately upon leaving that residence. . . . The affidavit attached to the search warrant is sufficient to establish probable cause for the issuance of the warrant.

6. Based on the totality of the circumstances, the magistrate in this case had a substantial basis to conclude that probable cause existed to search . . . [D]efendant's home at 92 Gillespie Drive . . . .

Defendant's trial began on September 17, 2019, in the Buncombe County

Superior Court. On September 20, 2019, a jury convicted Defendant on all counts: possession with intent to sell or deliver fentanyl, possession of fentanyl, possession of a firearm by a felon, and intentionally keeping or maintaining a dwelling for keeping or selling a controlled substance. Judgments were entered upon the jury's verdicts. Defendant timely gave notice of appeal in open court.

¶ 10 On appeal, Defendant argues the trial court erred in denying his motion to suppress and his motion to dismiss the charge of possession of a firearm by a felon. Defendant further contends the trial court erred in failing to instruct the jury on constructive possession of a firearm and in sentencing Defendant as a Class I felon.

## II. Discussion

¶ 11 Defendant first contends the trial court erred in denying his motion to suppress the evidence obtained through the search warrant, as the search warrant affidavit lacked probable cause for its issuance. After careful review, we agree and reverse the order denying Defendant's motion to suppress, as the application affidavit is fatally defective.

¶ 12 Our review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). "[T]he trial

court's conclusions of law are reviewed *de novo* and must be legally correct." *State v. Pickard*, 178 N.C. App. 330, 334, 631 S.E.2d 203, 206, *disc. review denied*, 361 N.C. 177, 640 S.E.2d 59 (2006).

¶ 13          Pursuant to N.C. Gen. Stat. § 15A-244, an application for a search warrant must contain a statement of probable cause and "[a]llegations of fact supporting the statement [of probable cause].  The statements must be supported by one or more affidavits particularly setting forth the facts and circumstances establishing probable cause . . . ."  N.C. Gen. Stat. § 15A-244(2)-(3) (2020); *see also State v. McKinney*, 368 N.C. 161, 164, 775 S.E.2d 821, 824 (2015).  The supporting affidavit "is sufficient if it supplies reasonable cause to believe that the proposed search for evidence of the commission of the designated criminal offense will reveal the presence upon the described premises of the objects sought and that they will aid in the apprehension or conviction of the offender." *State v. Campbell*, 282 N.C. 125, 132, 191 S.E.2d 752, 757 (1972) (quoting *State v. Vestal*, 278 N.C. 561, 576, 180 S.E.2d 755, 765 (1971)). "Probable cause 'does not mean actual and positive cause,' nor does it import absolute certainty." *Id.* at 129, 191 S.E.2d at 755 (quoting 47 Am. Jur., Searches and Seizures, § 22).  We review whether the issuing magistrate had "a 'substantial basis for . . . conclud[ing]' that probable cause existed." *State v. Arrington*, 311 N.C. 633, 638, 319 S.E.2d 254, 258 (1984) (citation omitted).

¶ 14          Whether the search warrant "affidavit is sufficient to show probable cause

must be determined by the issuing magistrate rather than the affiant. This is constitutionally required by the Fourth Amendment." *Campbell*, 282 N.C. at 129, 191 S.E.2d at 756 (citing *Johnson v. United States*, 333 U.S. 10, 68 S. Ct. 367, 92 L. Ed. 436 (1948)). The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV, XIV; *see also State v. McKinney*, 361 N.C. 53, 57-58, 637 S.E.2d 868, 871-72 (2006) (citations omitted); *State v. Smith*, 346 N.C. 794, 798, 488 S.E.2d 210, 213 (1997) (citations omitted). Under the Fourth Amendment, a search warrant may be issued only "upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; *see also State v. Allman*, 369 N.C. 292, 293, 794 S.E.2d 301, 302-03 (2016); N.C. Const. art. I, § 20. The issuing magistrate must "make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Arrington*, 311 N.C. at 638, 319 S.E.2d at 257-58 (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332, 76 L. Ed. 2d 527, 548 (1983)) (quotation marks omitted). A magistrate may make such determination upon "the totality of the circumstances," drawing "reasonable inferences" from the facts in an affidavit to support a finding of probable cause. *Id.*; *see also State v. Riggs*, 328 N.C. 213, 221, 400 S.E.2d 429, 434 (1991).

¶ 15        Factors "taken into account in the probable cause determination" include "[t]he experience and the expertise of the affiant officer . . . so long as the officer can justify his belief to an objective third party." *State v. Barnhardt*, 92 N.C. App. 94, 97, 373 S.E.2d 461, 462 (1988) (citation omitted). "The affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant; but the affidavit in such case must contain some of the underlying circumstances" to support the affiant's belief that probable cause existed. *Campbell*, 282 N.C. at 129, 191 S.E.2d at 755. The issuing magistrate may not rely on an affiant's mere belief that probable cause existed, as such "purely conclusory" affidavits are inappropriate to further the impartial objective of the magistrate. *Id.* at 131, 191 S.E.2d at 756 (citation omitted).

¶ 16        An affidavit "must establish a nexus between the objects sought and the place to be search[ed]." *State v. McCoy*, 100 N.C. App. 574, 576, 397 S.E.2d 355, 357 (1990) (citation omitted). "The existence . . . of a nexus is subject to the same totality of the circumstances inquiry as any other evidence establishing probable cause." *State v. Lovett*, No. COA20-539, 2021-NCCOA-171, 2021 WL 1541478, at ¶ 25 (N.C. Ct. App. April 20, 2021) (unpublished) (citing *McCoy*, 100 N.C. App. at 577-78, 397 S.E.2d at 357-58). Probable cause to search one location can be obtained from evidence at another location; however, such evidence must "implicate the premises to be searched." *State v. Washburn*, 201 N.C. App. 93, 101, 685 S.E.2d 555, 561 (2009)

(quoting *State v. Goforth*, 65 N.C. App. 302, 308, 309 S.E.2d 488, 493 (1983)).

¶ 17      In determining "whether the search warrant affidavit at issue established probable cause," we are guided by our Supreme Court's decision in *State v. Lewis*, 372 N.C. 576, 831 S.E.2d 37 (2019). In *Lewis*, the affidavit requested a search of a residence where a robber was arrested. *Id.* at 588, 831 S.E.2d at 45. However, the affidavit failed to properly implicate the residence when it did not detail the circumstances explaining law enforcement's presence at the residence; did not include a conversation between a deputy and the defendant's family member that would have revealed to the magistrate that the defendant lived at the residence; and did not mention that the defendant's car was seen at the front of the house. *Id.* Though the affidavit listed a thorough account of the defendant's incriminating behavior and law enforcement's activities in apprehending him, the affidavit was found to be fatally defective. *Id.* at 588, 831 S.E.2d at 45-46. In holding the defendant's motion to suppress should have been allowed, our Supreme Court reasoned the

> [d]efendant could have been present at [the residence] at the time of his arrest for any number of reasons. Absent additional information linking him to the residence or connecting the house with criminal activity, no basis existed for the magistrate to infer that evidence of the robberies would likely be found inside the home.

*Id.* at 588, 831 S.E.2d at 45-46.

In the present appeal, no evidence was presented at the suppression hearing[3] and the trial court's order states it made its findings of fact "after review of the Court file and after review of the contested search warrant." Moreover, "a trial court may not consider facts 'beyond the four corners' of a search warrant in determining whether a search warrant was supported by probable cause at a suppression hearing." *State v. Logan*, ___ N.C. App. ___, 2021-NCCOA-311, ¶ 27 (quoting *State v. Benters*, 367 N.C. 660, 673-74, 766 S.E.2d 593, 603 (2014)). The search warrant affidavit is the only document contained in the record on appeal containing allegations of fact to support a statement of probable cause. The trial court found that law enforcement officers "immediately" followed Jones from the residence and "quickly pulled . . . Jones over and stopped him." The affidavit attached to the search warrant does not reveal how much time passed once Jones left Defendant's residence and the time Jones was apprehended with narcotics during a traffic stop. In fact, the affidavit is devoid of any facts regarding when or how Jones obtained narcotics or whether he had narcotics in his possession prior to traveling to Defendant's residence. The affidavit merely states "Buncombe County Anti-Crime Taskforce Agents were able to advise SCET when Jones would be leaving the residence . . . and advised them the direction Jones would be traveling." It is not clear whether SCET members

---

[3] "[I]t is axiomatic that arguments of counsel are not evidence." *State v. Collins*, 345 N.C. 170, 173, 478 S.E.2d 191, 193 (1996) (citations omitted).

observed Jones leave 92 Gillespie Drive, nor how much time passed between when Jones left the residence and when law enforcement officers began following his vehicle. The remaining pages of the search warrant application do not detail why law enforcement believed the enumerated statutes were violated or why law enforcement believed 92 Gillespie Drive was Jones's source of supply. Therefore, we hold that the trial court's finding that law enforcement officers "immediately" followed Jones is unsupported.

¶ 19 Likewise, the trial court's finding that "the drug dealer was found with a substantial amount of drugs immediately upon leaving that residence," is not supported by the four corners of the affidavit. Although the affidavit states law enforcement officers stopped Jones and observed him "attempting to ingest an unknown substance," the affidavit does not provide any details as to how long law enforcement officers followed Jones, nor how long it took SCET officers to locate Jones's vehicle after BCAT agents informed SCET of the direction of travel. "Before a search warrant may be issued, proof of probable cause must be established by facts so closely related to the time of issuance of the warrant so as to justify a finding of probable cause at that time." *State v. Lindsey*, 58 N.C. App. 564, 565, 293 S.E.2d 833, 834 (1982)

¶ 20 Detective Sales believed the residence "to be the Source of Supply for Jones," but he did not provide the factual reason for his belief in the affidavit. While law

enforcement officers observed Jones at the property at least twice before, the affidavit does not detail how long Jones was inside the residence. Although the affidavit revealed a confidential informant purchased narcotics from Jones "in recent days" and that Jones was later observed at 92 Gillespie Drive, it is not clear how much time passed between the controlled purchase and when Jones was observed at Defendant's residence. The affidavit is devoid of facts detailing the confidential informant's conversation with Jones in which Jones stated he would need to obtain narcotics for the third controlled purchase. Thus, the trial court's finding that "[t]he residence to be searched is thereby linked to the drug activity" remains uncorroborated.

¶ 21 The trial court included the following as a conclusion of law: "[t]he affidavit attached to the search warrant is sufficient to establish probable cause for the issuance of the warrant." While Detective Sales's expertise and belief that 92 Gillespie Drive was Jones's source of supply bears weight, the affidavit application must state facts sufficient to support a finding probable cause existed. *See Barnhardt*, 92 N.C. App. at 98, 373 S.E.2d at 462; *see also Campbell*, 282 N.C. at 131, 191 S.E.2d at 756. As the trial court noted, all that can be discerned from the plain language of the affidavit is that law enforcement observed Jones at 92 Gillespie Drive and apprehended Jones with narcotics "on the same date." Notwithstanding the fact that Jones had visited the residence at least twice before, the record before this Court tends to show that Detective Sales did not provide any facts or circumstances that

would lead an objective magistrate to reasonably conclude that drugs or other illegal items could potentially be found at 92 Gillespie Drive. Jones "could have been present at [the residence] . . . for any number of reasons." *Lewis*, 372 N.C. at 588, 831 S.E.2d at 45-46. Probable cause cannot be shown by affidavits which are purely conclusory without detailing any of the underlying circumstances upon which the conclusion is based. Thus, we hold the affidavit, as stated in this case, does not provide sufficient facts and circumstances to supply a magistrate with a substantial basis to infer probable cause. Because we conclude the trial court erred in denying Defendant's motion to suppress, we do not need to address his remaining arguments on appeal.

### III.  Conclusion

After careful review, we hold the search warrant affidavit did not provide a sufficient basis for a finding of probable cause to search Defendant's residence. We reverse the order denying Defendant's motion to suppress and grant Defendant a new trial.

REVERSED AND REMANDED FOR NEW TRIAL.

Judge COLLINS concurs.

Chief Judge STROUD dissents by separate opinion.

STROUD, Chief Judge, dissenting.

Because I conclude the search warrant affidavit provides a sufficient basis for probable cause to search defendant's residence, I would affirm the order denying defendant's motion to suppress; therefore, I dissent.

I agree with the majority that the question before us is whether there was probable cause for the issuance of the search warrant.

> With regard to a search warrant directed at a residence, probable cause means a reasonable ground to believe that the proposed search will reveal the presence upon the premises to be searched of the objects sought and that those objects will aid in the apprehension or conviction of the offender.

*State v. Bailey*, 374 N.C. 332, 335, 841 S.E.2d 277, 280 (2020) (citation and quotation marks omitted). *Bailey* further explains,

> This standard for determining probable cause is flexible, permitting the magistrate to draw reasonable inferences from the evidence in the affidavit supporting the application for the warrant. That evidence is viewed from the perspective of a police officer with the affiant's training and experience, and the commonsense judgments reached by officers in light of that training and specialized experience. Probable cause requires not certainty, but only *a probability or substantial chance of criminal activity*. The magistrate's determination of probable cause is given great deference and after-the-fact scrutiny should not take the form of a *de novo* review.

*Id.* (emphasis in original) (citation, quotation marks, and ellipses omitted).

Here, the search warrant application included six pages of attachments detailing what was to be seized, the crimes Detective Sales believed were taking

place, a specific description of the location to be searched which included a picture of

a map with street names, and Detective Sales's affidavit.  The affidavit stated in part:

> The applicant swears or affirms to the following facts to establish probable cause for the issuance of a search warrant
>
> I, the affiant Jason B. Sales, am a sworn law enforcement officer with the Buncombe County Sheriff's Office. I am an Agent assigned to the Buncombe County Anti-Crime Task Force Division, tasked with investigating violations of criminal law and narcotic investigations. I have been a sworn Deputy for 16 years. I am currently a member of the Sheriff's Special Response Team (SRT) and a member of the Buncombe County Sheriff's Office Crisis Intervention Team (CIT). Prior assignments with this agency have included duties within the Special Investigations Division (Sexual Related Crimes), Property Crimes Division, Patrol Division, Court Security Division, Transportation Division, and in the Detention Center. I have had over 1,800 hours training in Law Enforcement related courses. I have had training in investigative processes, legal updates, execution of search warrants, resolution of barricaded suspects, and currently certified through LELA for Clandestine Labs related to, but not limited to Methamphetamine, LSD, MDMA, and Fentanyl. I hold a vocational diploma in Criminal Justice with AB-Tech.
>
> The information set forth in this affidavit is the result of my own investigation or has been communicated to me by others involved in this investigation.
>
> In recent days the Buncombe County Anti-Crime Taskforce (BCAT) with the aid of a confidential source of information (CSI) have purchased an amount of heroin/fentanyl from Robert Mitchell Jones (12/31/1959).
>
> With information received from the CSI, BCAT Agents

were able to surveille Jones on several occasions and observe him make what were believed to be narcotics transactions in the Leicester Community of Buncombe County. While surveilling Jones, BCAT Agents were also able to follow him to 92 Gillespie Drive, Leicester NC 28748, also believed to be the Source of Supply for Jones.

On this date, Thursday, April 19, 2018 BCAT Agents were able to once again surveille Jones and follow him to the 92 Gillespie Drive address. With the help of the Buncombe County Sheriff's Community Enforcement Team (SCET), BCAT Agents were able to advise SCET when Jones would be leaving the residence of 92 Gillespie Drive and advised them the direction Jones would be traveling. With the SCET team in place, BCAT Agents observed Jones leave 92 Gillespie Drive and turn right onto New Leicester Hwy. BCAT Agent informed SCET the direction of travel and the type of vehicle Jones was operating (Maroon/Red Nissan extra cab 2wd pick-up). SCET was able to locate the vehicle and form their own basis for probable cause to effect a vehicle stop for Jones. SCET was able to determine their own probable cause for the stop and initiate said stop. Once the blue lights were activated, Jones was observed attempting to ingest an unknown white powdery substance. The traffic stop was conducted in the parking lot area of 3148 New Leicester Hwy, BP Service Station. At the traffic stop Jones exited his vehicle and [was] approached by Deputies. Deputies observed a plastic baggie sticking out of Jones['s] rear pocket and was motioning to the baggie. Deputies went to retrieve the baggie and some of the white powdery substance went airborne into the Deputies['s] face. Jones was placed under arrest and a subsequent search for suspected heroin/fentanyl was conducted. In the search of the vehicle Deputies were able to locate three (3) individual wrapped foil packs containing approx. two (2) grams of suspected heroin/fentanyl each inside the vehicle. EMS was called to the traffic stop and were able to observe Jones and the Deputy exposed to the suspected heroin/fentanyl.

> Based on my training and experience, and the facts as set
> forth in this affidavit, I believe that in the residence of 92
> Gillespie Drive, there exists evidence of a crime and
> contraband or fruits of that crime, to include the use and
> sale of illegal narcotics. With the information of the officers
> and confidential sources involved in this case, the affiant
> respectfully requests of the court that a search warrant be
> issued.

According to the majority opinion, the main deficiency in the affidavit appears to be the passage of time both (1) in the prior days when law enforcement had observed what they believed to be illegal drug transactions and (2) from the time Jones left defendant's house until he was stopped and apprehended with narcotics.

The affidavit notes that the prior purchases from Jones were made "[i]n recent days[,]" and it is sufficiently specific enough to note the transactions as "recent[.]" I am not aware of any case law requiring search warrants to provide more specific details than noting "in recent days[,]" particularly when as here, there are many other specific details in the affidavit to test its veracity. *See generally State v. Ellington*, 18 N.C. App. 273, 196 S.E.2d 629, *aff'd*, 284 N.C. 198, 200 S.E.2d 177 (1973) (determining that an affidavit provided reasonable cause to search luggage where it noted information had been obtained "recently"). In later interpreting *Ellington*, this Court stated in *State v. Brown*,

> In *State v. Ellington*, 284 N.C. 198, 200 S.E.2d 177
> (filed 14 November 1973), the Supreme Court refused to
> hold that the following language in an affidavit was

insufficient under *Aguilar v. Texas*, *supra*, to establish the reliability of a confidential informant:

> "Deputy Simmons advises that his informer is 100% reliable, and that information obtained from this same informant recently led to the confiscation of 120,000 Barbituates recently in New York City."

The obvious distinction between the affidavit in *Ellington*, *supra*, and the affidavit before us is that the former refers—although generally—to a specific instance of information whereas the latter refers only to a general pattern of information. Nevertheless, we hold that this affidavit is sufficient under *Aguilar v. Texas*, *supra*, and *State v. Ellington*, *supra*.

> "[T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. *If the teaching of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.*" *State v. Ellington*, *supra*, at 204, 200 S.E.2d at 181 [quoting *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965)].

*State v. Brown*, 20 N.C. App. 413, 415, 201 S.E.2d 527, 529 (1974) (emphasis added).

As to the timing of when Jones was stopped, a plain reading of the affidavit

indicates Jones was stopped very quickly after driving away from defendant's home. In denying the motion to suppress, the trial court fairly summarized the affidavit in finding "[t]hat immediately upon Mr. Jones leaving this property law enforcement followed Mr. Jones and based on other probable cause they *quickly* pulled Mr. Jones over and stopped him[.]" (Emphasis added). The majority's own summary of the facts indicates that it was approximately two minutes from when Jones left defendant's residence until law enforcement attempted to stop him.

¶ 28        Further, the affidavit notes that law enforcement was in place already aware of "the direction Jones would be traveling" so that they could quickly stop him, and Jones had only made one right turn before the stop. While the local magistrate was likely aware of the proximity of the locales mentioned in the affidavit, I take judicial notice that defendant's house is 2.8 miles from the address where Jones was stopped, and thus assuming normal driving speeds, the time to travel the distance would be at most a few minutes. *See* N.C. Gen. Stat. § 8C-1, Rule 201 (2019) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. . . . A court may take judicial notice, whether requested or not."); *see generally State v. Brown*, 221 N.C. App. 383, 387, 732 S.E.2d 584, 587 (2012) (taking "judicial notice of the driving distance between White's residence and

defendant's girlfriend's apartment as being in excess of 27 miles. In *State v. Saunders*, 245 N.C. 338, 342, 95 S.E.2d 876, 879 (1957), our Supreme Court held that it was appropriate for the trial court to take judicial notice of the distance in miles between cities in Virginia and North Carolina."). I believe the trial court's characterization of the stop as "immediat[e]" was accurate given "a commonsense and realistic" interpretation rather than the "[t]echnical [interpretation of the] requirements [with] elaborate specificity" which is discouraged. *Brown*, 20 N.C. App. at 415, 201 S.E.2d at 529.

¶ 29        A "commonsense" reading of the search warrant affidavit, *Bailey*, 374 N.C. at 335, 841 S.E.2d at 280, indicates that due to his extensive training and experience as a law enforcement officer Detective Sales was familiar with the circumstances generally surrounding illegal drug sales; via a confidential informant Detective Sales was aware Jones had recently been dealing in illegal drugs; other law enforcement officers surveilled Jones "on several occasions" conducting what they believed were narcotic transactions, including at defendant's home;  law enforcement observed Jones enter defendant's home; immediately after leaving defendant's home, law enforcement officers, based on other established probable cause attempted to stop Jones and saw him ingesting a white substance; a search of Jones's vehicle revealed many illegal drugs. The affidavit establishes, "a reasonable ground to believe that the proposed search will reveal the presence upon the premises to be searched of the

objects sought and that those objects will aid in the apprehension or conviction of the offender." *Id.*

¶ 30    Accordingly, I would affirm the trial court's order determining there was probable cause for issuance of the search warrant.  Thus, I dissent.