STATE OF NORTH CAROLINA v. JENNIE CAROL ELLINGTON

No. 42

(Filed 14 November 1973)

Searches and Seizures § 3— search warrant for marijuana — sufficiency of affidavit

> In a prosecution for possession of marijuana with intent to distribute, there was probable cause for issuance of a search warrant where the affidavit alleged that a deputy sheriff in California telephoned Greensboro and informed officers there that, based on a tip from a reliable informer, he had information that two girls were flying into Greensboro at a specified hour with marijuana in their possession, the California officer described the girls' appearance in detail, the informer's reliability was attested to, the officer in Greensboro verified that the California sheriff was who he claimed to be, and the Greensboro officer confirmed through the airline company that defendant and a companion were passengers on a flight bound for Greensboro.

IN this criminal prosecution the defendant was tried before *Crissman, J.,* at the January 1973 Session, GUILFORD Superior Court (Greensboro Division) for feloniously possessing (with intent to distribute) more than five grams of marijuana.

At the trial the evidence disclosed that the Guilford County officers, under a search warrant issued by H. G. Shoffner, Magistrate, seized 138 pounds of marijuana carried in four suitcases and arrested the defendant, Jennie Carol Ellington, and her companion, Patrice Lee Walters. Both were arrested in Guilford County after they had arrived at the Greensboro Airport on Eastern Airlines Flight 203 from San Diego, California. Their baggage consisted of four large suitcases, each secured by a combination lock.

The defendant, represented by counsel, waived a preliminary hearing, and was bound over to the superior court. At the arraignment in the superior court and before the jury was chosen, defense counsel made these motions: (1) That the prosecution disclose the name and address of the alleged confidential informer referred to in the affidavit attached to the search warrant under which the officers seized the contraband; (2) that the search warrant and the affidavit upon which it was based were legally insufficient to authorize the magistrate to issue the search warrant; and (3) that all evidence resulting from the search be suppressed.

State v. Ellington

The affidavit upon which Magistrate Shoffner issued the search warrant is here quoted in full:

"AFFIDAVIT TO OBTAIN SEARCH WARRANT

STATE                                                    )
  v.                                           )
Two White Females described as follows:                  )
#1—Age 20's, 5'6", 105-110 lbs., Brown fuzzy hair )
#2—Age 20's, 5'6", 120-130 lbs., Blond hair              )
Possibly using the names Miss J. Ellington               )
    or Miss P. Walters.               )

C. D. Wade being duly sworn and examined under oath, says under oath that he has probable cause to believe that the above have in their possession certain property, to wit: 25 to 30 kilos of Marijuana, a controlled substance, a crime, to wit: Illegal Possession of Controlled Substance, Marijuana. The property described above is located Greensboro-High Point Regional Airport described as follows: Guilford County, N. C. (See Affidavit). The facts which establish probable cause for the issuance of a search warrant are as follows:

At 4:00 a.m., 9-22-72, Deputy Sheriff Robert Simmons of the San Diego, California Sheriff's Office, called the Communications Center of the Greensboro Police Department and talked to Operator Thomas. He gave the following information: He advised of the transportation of 25 to 30 kilos of Marijuana being transported by the following subjects: Two W/F's. (1) W/F, 20's, 5'6", 105-11 [sic] Lbs., has brown fuzzy hair & was wearing green and blue floor length flowered dress. Poss. travelling by the name of Miss J. Ellington or Miss P. Walters. (2) W/F, 20's, 5'6", 120-130 Lbs., has blonde hair and was wearing short white rough type fabric dress. Also poss. travelling by one of names aforementioned. They will have a total of 4 suitcases with them, they will all be large 3-suiter type. Two of them will be Blue Sky-way, 1 will be a brown sky-way, and the other will be a brown Ventura. All of them will have combination locks. The baggage tickets will be as follows 17-33-13, 17-33, 14, 17-33-15, 17-33-16. They are enroute to Greensboro from San Diego, their ultimate destination is here.

State v. Ellington

They will be coming into Greensboro-High Point Airport on flight 203 Eastern Airlines.

Deputy Simmons advises that his informer is 100% reliable, and that information obtained from this same informant recently led to the confiscation of 120,000 Barbiturates recently in New York City.

Deputy Simmons also advised that he could be reached after 0900 hrs. their time (1200 Hrs.) our time, at the following number 714-297-2848 this would be the Metropolitan Enforcement Detail.

This affiant, C. D. Wade, has confirmed through Eastern Airlines that subjects using the names above of the suspects, are in fact on Eastern Flight 203 and are expected to arrive at the Greensboro-High Point Regional Airport at 11:07 a.m. our time.

This affiant also confirmed by telephone that Deputy Simmons is in fact a law enforcement officer with the San Diego, California Sheriff's Office.

Signed: C. D. WADE
Affiant"

After obtaining the search warrant the Guilford County officers met Eastern Airlines Flight 203 at the airport in Guilford County. The defendant, Miss Ellington, and Miss Walters, her companion, deplaned and appeared at the baggage counter where they surrendered their baggage checks, claimed, and took possession of four large suitcases, each equipped with a combination lock. After the defendant and her companion took possession of the four bags, they entered a cab and headed for the open road. The officers stopped the cab, took possession of and searched the four bags in which they found 138 pounds of marijuana. The officers seized the bags and contents and arrested both females.

When the court overruled defense motions to suppress the evidence which the officers had obtained as a result of the search, the defendant moved to quash the indictment on the additional ground that G.S. 90-95(f) (3) was unlawfully discriminatory in that the statute made the possession of more than five grams of marijuana *prima facie* evidence of the intent to distribute the contraband. After the court overruled all defense motions, the trial before the jury began.

---

**State v. Ellington**

---

The State, over objection, offered the testimony of the officers with respect to their search and the finding of 138 pounds of marijuana in the luggage carried by the defendant and her traveling companion, Miss Walters. The State called as its witness and examined Miss Walters. She testified:

> "I was there [the airport] with the defendant, Miss Ellington. We were coming from San Diego, California; . . . Yes, I recognize those exhibits numbers 2, 4, 6 and 8 [the 4 suitcases seized by the officers] and I have seen them before. I first saw those four exhibits in San Diego, California on Mission Boulevard. Miss Ellington was there at the time. . . . Somebody loaded them up with marihuana. . . . Miss Ellington told me that I would be paid $50.00 for every pound of marihuana and that my plane fare to Greensboro and then back to California would be paid out of that fee. I know how many pounds were in there. There were approximately one-hundred pounds."

At the close of the State's evidence the defendant moved to dismiss, rested without offering evidence, and renewed the motion which the court overruled.

The jury returned a verdict finding the defendant guilty as charged in the bill of indictment. The court imposed a sentence of four years in the State's prison. The defendant excepted and gave notice of appeal to the Court of Appeals. The Court of Appeals, in the opinion by Campbell, J., concurred in by Hedrick and Vaughn, J.J., found no error in the trial. The defendant appealed to this Court, contending her constitutional rights were denied by the introduction of the fruits of an illegal search of her baggage.

*Robert Morgan, Attorney General, by Charles A. Lloyd, Assistant Attorney General, for the State.*

*Booe, Mitchell, Goodson, and Shugart by William S. Mitchell for the defendant.*

HIGGINS, Justice.

Both the Constitution of the United States and the Constitution of North Carolina contain guarantees against unlawful searches and seizures. Both constitutions contain limitations on

the right of the courts to issue search warrants. Article IV, Constitution of the United States, provides:

> "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The Constitution of North Carolina, Article 1, Sec. 20, provides:

> "General warrants, whereby any officer or other person may be commanded to search suspected places without evidence of the act committed, or to seize any person or persons not named, whose offense is not particularly described and supported by evidence, are dangerous to liberty and shall not be granted."

The guarantees protect against *unreasonable* searches and seizures. They are designed for the protection of the innocent. The issuing courts, in harmony with the law, presume innocence until probable cause to the contrary is made to appear.

Officer Wade, who made the affidavit, did not have or claim to have, any personal knowledge either of the identity of the two females on Eastern Airline Flight 203 from San Diego to Greensboro, or of the contents of the four bags they carried. Personal knowledge was not required. *McCray v. Illinois,* 386 U.S. 300, 18 L.Ed. 2d 62, 87 S.Ct. 1056. Wade's information came from Officer Simmons, a deputy sheriff in San Diego, California. Wade, an officer in North Carolina, was justified in relying on the information from an officer in California. *U. S. v. Ventresca,* 380 U.S. 102, 13 L.Ed. 2d 684, 85 S.Ct. 741. Deputy Sheriff Simmons called from San Diego to the sheriff's office in Greensboro at 4 a.m. and gave the information contained in the affidavit. "He advised of the transportation of 25 to 30 kilos of Marijuana. . . . " A kilo (metric) is approximately 2.4 pounds (avoirdupois). He advised the transportation was by two females, describing the defendant and Miss Walters. The descriptions gave the approximate age, dress, appearance, and stated that they possessed four large traveling bags, giving the color of the bags, which were secured by combination locks.

State v. Ellington

Simmons gave information that the subjects were passengers on Eastern Airlines Flight 203 from San Diego to Greensboro. Mr. Wade, before making the affidavit, checked further and ascertained that Simmons in San Diego was the officer he claimed to be. Officer Simmons stated that the defendant and Miss Walters, "[H]ave in their possession . . . 25 to 30 kilos of Marijuana . . . . " From the weight and bulk of the contraband a sensible officer would conclude that if they were transporting such quantity of marijuana, of necessity it must be in the bags. The number, size, and locks on the bags indicated they contained something of value.

When Wade's affidavit is critically examined, it furnished Magistrate Shoffner ample information upon which to find that probable cause existed for the search which the officers made. The California officer's information which was relayed to Magistrate Shoffner by Officer Wade, supplemented by the facts that Wade ascertained on his own account, taken together, furnished ample evidence to authorize the search and the seizure of the contraband and the arrest of the two females who were transporting it.

The defendant argues long and loud that *Aguilar v. Texas,* 378 U.S. 108, 12 L.Ed. 2d 723, 84 S.Ct. 1509, is authority against the sufficiency of Wade's affidavit. In Aguilar the following appears to be the full text of the affidavit upon which the warrant was based: "Affiants have received reliable information from a credible person and do believe that heroin, marijuana, barbiturates and other narcotics and narcotic paraphernalia are being kept at the above described premises for the purpose of sale and use contrary to the provisions of law." The foregoing affidavit is a scatter gun shot in the dark and suggests that what the affiant wants is authority for a fishing expedition. It covers too many different materials to indicate anything less than a hope to catch a fish of some species and of some size.

In *State v. Campbell,* 282 N.C. 125, 191 S.E. 2d 752, the warrant issued on another scatter gun affidavit recites that the officer "[B]eing duly sworn and examined under oath, says under oath that he has probable cause to believe that Kenneth Campbell [and two others, naming them] has on his premises certain property, to wit: illegally possessed drugs (narcotics, stimulants, depressants), which constitutes evidence of a crime, to wit: possession of illegal drugs . . . . " This affidavit is in

the same category as the affidavit in Aguilar. Neither states facts from which probable cause for the search may be inferred.

In *Spinelli v. United States,* 393 U.S. 410, 21 L.Ed. 2d 637, 89 S.Ct. 584, the Court said: "In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation."

The latest pronouncement on the question before us comes from the decision of the Supreme Court of the United States in *U. S. v. Harris,* 403 U.S. 573, 29 L.Ed. 2d 723, 91 S.Ct. 2075:

"In evaluating the showing of probable cause necessary to support a search warrant, against the Fourth Amendment's prohibition of unreasonable searches and seizures, we would do well to heed the sound admonition of *United States v. Ventresca,* 380 U.S. 102 (1965):

'[T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teaching of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.' 380 U.S., at 108."

In this case we are dealing with a big league operation. Its ramifications span the continent. The amount of contraband involved, together with the evidence of Miss Walters, clearly shows that a big supplier in California was furnishing contraband to a big dealer in North Carolina. The defendant, and Miss Walters perhaps to a lesser degree, were serving major operators. But for the vigilance and combined efforts of the

law enforcement officers, 138 pounds of illegal dope would have been available to persons of all ages in and around Greensboro. The evidence in this case fails to disclose any valid legal or moral reason why the officers and the courts should look with favor on the defendant's highly technical and microscopic objections to the search warrant.

The defendant's objections not herein discussed are fully treated in the decision of the Court of Appeals which is now

Affirmed.