State v. Hansen

---

STATE OF NORTH CAROLINA v. STANLEY E. HANSEN, ALIAS THOMAS CHARLES WILLIAMSON

No. 7512SC447

(Filed 19 November 1975)

1. Searches and Seizures § 3— search warrant for narcotics — sufficiency of affidavit

There was probable cause for issuance of a warrant to search defendant's suitcases for narcotics where the affidavit stated that the affiant, a police officer, had received information from a reliable informant that a person known to him as "Tom Williamson" had gone to California to obtain marijuana and was scheduled to return to Fayetteville by Piedmont Airlines on a specfic date and at a specific time, that the marijuana would be in two large brown suitcases, and that the informant had provided information on five prior occasions which resulted in five arrests.

2. Searches and Seizures § 4— search under warrant — failure to obtain warrant prior to arrest

A search of defendant's suitcase pursuant to a warrant was not rendered illegal by the officer's failure to obtain the warrant prior to defendant's arrest at an airport upon his arrival from another state rather than after his arrest.

3. Searches and Seizures § 3— search warrant — failure to name defendant — search of suitcase

Failure of a search warrant specifically to name defendant as purportedly required by G.S. 15-26 did not vitiate a search under the warrant where the officer who obtained the warrant sought to examine two suitcases and the warrant sufficiently described the luggage pursuant to statutory requirements, and the warrant also entitled

State v. Hansen

the officer to search the "subject unknown to affiant for the property in question."

4. **Searches and Seizures § 4— search under warrant — failure to give defendant copy of warrant**

Search pursuant to a warrant was not rendered illegal by failure of the officer to deliver a copy of the warrant to defendant as required by former G.S. 15-21 and former G.S. 15-25(d) where the officer read the warrant to defendant.

5. **Searches and Seizures § 4— search warrant — failure to file with clerk**

A search pursuant to a warrant was not rendered illegal because the warrant was never filed with the clerk of superior court pursuant to former G.S. 15-25(d).

6. **Searches and Seizures § 3— failure of record to show irregularity of warrant**

Contention that a search warrant was invalid because the affidavit and warrant were not attached together as required by former G.S. 15-26(b) will be considered to have no merit where the record does not show whether the affidavit was attached to the warrant.

7. **Criminal Law § 113— instructions — review of voir dire testimony — harmless error — waiver of objection**

In a prosecution for felonious possession of various narcotics, defendant was not prejudiced by the court's recapitulation of the voir dire testimony of an officer concerning information received from a confidential informant which led to defendant's arrest; furthermore, defendant waived objection to the court's review of such evidence by failing to object thereto before the jury retired.

ON *certiorari* to review proceedings before *Bailey, Judge.* Judgment entered 22 January 1975 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 18 September 1975.

Defendant was charged with felonious possession of various quantities of hashish, marijuana, cocaine and Lysergic Acid Diethylamide.

This case arose initially from an informant's tip to a narcotics officer. In his affivadit to obtain a search warrant, arresting narcotics officer J. L. Beard of the Cumberland County Sheriff's office averred that the initial tip-off came through ". . . a reliable confidential informer. The informer told . . . [me] . . . that a subject known to him [i.e. the informant] as TOM WILLIAMSON had left for California to pick up several pounds of marijuana. The informer stated that the subject known to him as Williamson was returning to Fayetteville, N. C., on Piedmont Air Lines on Friday night, January 18,

1974, at about 10:45 p.m. and would have the marijuana in two br . . . [sic] large suitcases. The informer is knowledgeable as to the narcotics traffic in the Cumberland County area and has given . . . [me] . . . information on five occasions in the past that have resulted in five arrests." During a voir dire examination, with the jury outside of the courtroom, Beard further explained that the informant on Wednesday, 16 January 1974, had described the defendant as ". . . fairly thin, about five ten, five eleven to six feet tall, with long, sandy blonde hair down to his shoulders, complexion a little ruddy; he wore Indian type jewelry and that type of thing." On the next day, Thursday, Beard inquired with the Piedmont Air Lines personnel and was told that "they had no such reservation on file at that time." Beard further testified that he went to the airport Friday evening to pick up a friend and there learned for the first time from the airline company that a passenger fitting the description given to them by Beard on Thursday was apparently on board one of their in-bound flights. Beard stated that he saw the defendant emerge from the plane and watched him come ". . . down the steps. He had on a pair of blue jeans, a V-neck sweater, boots, his hair was down just about to his shoulders, I would say, a light colored shirt, and quite a bit of Indian turquoise jewelry around his neck, necklaces, and I believe he had on a turquoise bracelet. He did not have anything with him when he first got off the plane. . . . He went over to the claim area and claimed two suitcases." Beard approached defendant as soon as the latter had picked up the bags and identified himself as an officer and told defendant that he was being detained for a narcotics investigation. Taking defendant to a room inside the terminal, Beard advised defendant of his rights, but defendant said nothing when questioned. Beard then took the defendant to the Sheriff's office to obtain a search warrant and again advised defendant of his rights and told him that he ". . . was going to treat him right . . ." and allowed defendant to sit in the room unfettered by handcuffs. However, defendant broke from the room as Beard started to type the warrant. Recaptured in the hallway, defendant returned to the room and sat handcuffed to the chair while Beard read the contents of the warrant to him.

Beard recalled that upon opening the suitcases, he ". . . saw white plastic bags, baby powder, a few articles of clothing. The baby powder was just like somebody had taken the top off

of a bottle or two of baby powder and just poured it all over the inside of the suitcases, all on the plastic bags and in between the clothes. . . . Inside each of the suitcases, there were six of these white plastic bags with knots tied in them. . . . Inside the plastic bags there were two compressed bricks of green vegetable matter. . . . [Also found] in a side compartment of the smaller suitcase . . . [was] a glass vial containing a brownish substance, a piece of paper with fifteen, seventeen dots on it, and another piece of paper with two pink pills in it[,] . . . a small clear plastic bag with some green vegetable matter in it also. . . . [Asked] . . . where he had gotten the things in the bag, . . . [Hansen] . . . stated that he had bought them from some people in a park in Los Angeles." When asked by Beard what the material consisted of, defendant told the officer that the glass vial contained hash oil, the brown dots on the paper and the two pink tablets contained LSD, and the bricks contained approximately 50 pounds of marijuana. Finally, when asked whether he had missed anything in the search of the bag, defendant replied "No," but then ". . . pulled out a pack of cigarettes . . . and pulled out . . . a yellow piece or roll of paper, and . . . [said] he had some cocaine in his pocket. . . ."

The State then presented evidence by a chemist which tended to show that the material seized was marijuana, marijuana resine, cocaine and LSD.

Defendant presented no evidence.

From a plea of not guilty, the jury returned a verdict of guilty. From judgment sentencing him to a term of imprisonment, defendant appealed.

Other facts necessary to decision are cited in the opinion.

*Attorney General Edmisten, by Associate Attorney Robert P. Gruber, for the State.*

*Anderson, Nimocks and Broadfoot, by Henry L. Anderson, Jr., for defendant appellant.*

MORRIS, Judge.

Defendant first attacks various aspects of the search warrant and the subsequent search and seizure. Specifically, defendant contends that (1) the warrant, obtained on the basis of evidence presented in an affidavit, was issued without prob-

able cause; (2) the police should have obtained the search warrant prior to arresting defendant at the airport; (3) the warrant should have named the defendant as purportedly required under G.S. 15-26(a); (4) the arresting officer failed to deliver a copy of the warrant to defendant as required by G.S. 15-21 and 15-25(d); (5) the warrant was never filed with the Clerk of Superior Court pursuant to G.S. 15-25(d) and thus violated due process and adequate notice; and (6) the affidavit and warrant were not attached together as required under G.S. 15-26(b).

[1] There is little doubt that the arresting officer's affidavit to obtain a search warrant sufficiently detailed circumstances which would enable the magistrate to find probable cause. With considerable particularity and detail, the affidavit described the suitcases in which marijuana was allegedly being transported and indicated that the cases purportedly held in excess of 20 pounds of contraband drugs. The affiant further explained that the subject known as "Tom Williamson" had journeyed to California to make the pickup and was scheduled to return to Fayetteville on a specific date and at a specific time with the drugs in hand. Finally, Agent Beard pointed out that the informant had an accurate track record in this area and was considered reliable. In a similar case, North Carolina narcotics officers learned through a California police officer's phone call that the defendants were to fly into Greensboro with a considerable cache of drugs. The California phone caller described the suspects and their luggage and North Carolina officers reduced this information to writing in their affidavit to obtain a search warrant. *State v. Ellington,* 284 N.C. 198, 200 S.E. 2d 177 (1973). Justice Higgins, speaking for the Court in *Ellington,* reviewed carefully and critically the information outlined in the affidavit and declared that it furnished ". . . ample information upon which to find that probable cause existed for the search which the officers made." *Id.* at 203. In *Ellington,* the North Carolina authorities learned of the drug traffic through a California officer's account, essentially pieced together from West Coast sources and this "third-hand" account formed the basis of the lawful North Carolina search warrant. Here, the North Carolina officer, swearing out the affidavit against defendant Hansen, learned of the offense directly from his North Carolina informant. Arguably, this makes the facts in this case more compelling than the facts in *Ellington.* Defendant's con-

tention that there was no probable cause to issue a search warrant is without any substance.

[2]    Defendant also maintains that the arresting officer should have obtained the search warrant prior to defendant's arrival at the airport in Fayetteville. We again find this contention lacking in merit. Beard testified that he actually did not know of defendant's impending arrival that evening until he actually walked into the airport terminal to pick up a friend who was visiting Fayetteville. At that point, Beard was simply a citizen waiting for a friend's arrival. However, upon Beard's arrival at the terminal, the airline desk personnel advised him that the suspect was in-bound on the same Atlanta flight which carried his friend. Beard recalled during a voir dire that "I thought to myself that if I hadn't been there picking that person up, and I had been involved with something else on the other side of town, I probably would have missed him [i.e. the defendant]. . . . I had expected Williamson on Friday night ever since Wednesday. I had reason to believe ever since Wednesday that he would be carrying two substantial size brown suitcases of contraband. The particular reason why the search warrant was not obtained on the basis of the information available in the Sheriff's Department was a couple of things; first of all, once you draw one at certain times, you know; they have to be nailed down pretty much. I think the time limit is twenty-four hours. So I would have to have drawn the search warrant sometime Thursday afternoon or sometime Friday morning. My information was that . . . Hansen was supposed to come back Friday night, and to the best of my people's knowledge, he was supposed to come back Friday night. He never booked a return flight. This was some more information I had. There is no way I could tell, and I just didn't want to go draw a search warrant and then maybe have the man come in on Saturday morning or Saturday afternoon or whatever." We believe Beard's reaction to the particular events and circumstances then confronting him was reasonable and prudent.

[3]    Defendant, moreover, argues that the warrant should have specifically named him as purportedly required by G.S. 15-26. Here the officer primarily was seeking to examine two suitcases and the warrant sufficiently described the luggage pursuant to all statutory requirements. The warrant also entitled the officer to search the "subject unknown to affiant for the property in question." This description of the defendant is reasonable under

State v. Hansen

these particular circumstances. When Beard actually confronted defendant at the airport and asked for identification, all defendant could produce was a North Carolina hunting license showing the name "Thomas Charles Williamson." Later, police learned that this name was actually an alias. The warrant, drawn shortly after defendant's arrival, reflected accurately the still unsettled question of the defendant's actual identity and yet clearly identified the target of this particular search warrant. Our Court has previously stated that search warrants " '. . . must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area.' " *State v. Flowers,* 12 N.C. App. 487, 492, 183 S.E. 2d 820 (1971) ; cert. denied 279 N.C. 728, 184 S.E. 2d 885 (1971) ; quoting from *United States v. Ventresca,* 380 U.S. 102, 13 L.Ed. 2d 684, 85 S.Ct. 741 (1965).

[4]  Defendant also avers that the arresting officer failed to deliver a copy of the warrant to defendant as required by G.S. 15-21 and 15-25 (d). Beard testified that he read the warrant to defendant, and we can find no error in such a procedure. *State v. McDougald,* 18 N.C. App. 407, 408, 197 S.E. 2d 11 (1973) ; cert. denied 283 N.C. 756, 198 S.E. 2d 726 (1973). Moreover, G.S. 15-21, applicable to the instant case, though repealed effective 1 July 1975, provides that failure to comply with the technical provisions of the statute does not ". . . invalidate the arrest."

[5]  Defendant further insists that his right to notice and due process was violated because the warrant was never filed with the Clerk of Superior Court pursuant to G.S. 15-25 (d). Defendant cites no authority for this contention, and the State candidly admits that it too has failed to find any authority on the subject. However, the State notes correctly, and we so hold, that under G.S. 15-27 (b) "no search may be regarded as illegal solely because of technical deviations in a search warrant from requirements not constitutionally required." Here the error, if any, was simply technical and does no harm to defendant's constitutional rights to due process and notice. He simply cannot argue realistically that he did not know of the warrant.

[6]  Defendant also argues that the affidavit and warrant were separated from each other in violation of G.S. 15-26 (b).

Our Supreme Court has held that a " 'search warrant will be presumed regular if irregularity does not appear on the face of the record. ' " (Citation omitted.) *State v. Spillars*, 280 N.C. 341, 350, 185 S.E. 2d 881 (1972). Here, the record does not indicate whether the affidavit was attached to the warrant. We find no merit in this contention.

[7]  Defendant's other major contention is that the trial court, while instructing the jury, erred by bringing to the jury's attention facts which had not been brought forth during the trial but only were expressed during a voir dire examination of Beard. Specifically, the judge stated to the jury that Beard had testified:

> "[T]hat he had received information at an earlier time that a person known to the informant as Thomas (John) Charles Williamson had been making trips from Fayetteville to the west coast and back; that Williamson when he went customarily went on Wednesdays, carrying two large brown suitcases which he carried away substantially empty; that he usually returned on Fridays with a substantial quantity of marihuana in the suitcases; that he traveled by air. The informant stated that the man known to him as Thomas (John) Charles Williamson customarily wore his hair to about the height to his shoulders; that he usually dressed in blue jeans with a V-sweater, was moderate to somewhat larger than moderate in size; that he usually wore a turquoise necklace and a turquoise bracelet. Based on this information, Mr. Beard made inquires of Piedmont Airlines as to whether or not a person by the name of Thomas Charles Williamson had a reservation into Fayetteville. He was informed that there was no such reservation at that time, and he asked the Piedmont agent to notify him if he learned of such a reservation."

The State does not challenge this contention but argues that its impact was harmless. We concur with the State's position and find no prejudice to the defendant by the trial court's error. Moreover, defendant has waived the right to contest this error. " 'The general rule in this State is that objections to the charge in reviewing the evidence and stating the contentions of the parties must be made before the jury retires to afford the trial judge an opportunity for correction; otherwise they are deemed to have been waived and will not be considered on appeal.' " *State v. West*, 21 N.C. App. 58, 60, 203 S.E. 2d 86 (1974);

cert. denied 285 N.C. 376, 205 S.E. 2d 101 (1974), quoting *State v. Thomas,* 284 N.C. 212, 200 S.E. 2d 3.

Defendant next contends that he was not properly advised of his *Miranda* and *Escobedo* rights. The record clearly indicates that defendant was fully advised of his constitutional rights by Beard.

We have considered defendant's other contentions and find them also to be without merit.

No error.

Judges HEDRICK and ARNOLD concur.