IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-590

 No. COA20-758

 Filed 2 November 2021

 Buncombe County, No. 18 CRS 723-24; 18 CRS 83834; 18 CRS 83836

 STATE OF NORTH CAROLINA,

 v.

 DOMINIQUE JAWANN EDDINGS, Defendant.

 Appeal by Defendant from judgments entered 20 September 2019 by Judge J.

 Thomas Davis in Buncombe County Superior Court. Heard in the Court of Appeals

 8 June 2021.

 Attorney General Joshua H. Stein, by Assistant Attorney General Jonathan R.
 Marx for the State.

 W. Michael Spivey for Defendant-Appellant.

 WOOD, Judge.

¶1 Defendant Dominique Jawann Eddings (“Defendant”) appeals convictions of

 possession with intent to sell or deliver fentanyl, possession of fentanyl, possession of

 a firearm by a felon, and intentionally keeping or maintaining a building for keeping

 or selling a controlled substance. Prior to trial, Defendant moved to suppress

 evidence obtained during a search of his residence. The trial court denied the motion,

 finding probable cause. On appeal, Defendant challenges the denial of his motion to
 STATE V. EDDINGS

 2021-NCCOA-590

 Opinion of the Court

 suppress; the denial of his motion to dismiss the charge of possession of a firearm by

 a felon; jury instructions given regarding the distinction between actual and

 constructive possession; and an alleged sentencing error. After careful review, we

 reverse the order denying Defendant’s motion to suppress and grant Defendant a new

 trial.

 I. Factual and Procedural Background

¶2 In 2018, the Buncombe County Sherriff’s Office believed Robert Jones (“Jones”)

 was selling narcotics in Leicester, North Carolina. Law enforcement had a

 confidential informant make a controlled purchase of narcotics from Jones at Jones’s

 residence.

¶3 When the confidential informant successfully purchased fentanyl from Jones,

 law enforcement asked the informant to complete a second controlled purchase.

 Jones told the informant that “[h]e didn’t have narcotics. He would have to go get

 narcotics.” Law enforcement began surveilling Jones and observed Jones travel to a

 residence located at 92 Gillespie Drive. Jones remained at 92 Gillespie Drive for less

 than thirty minutes before meeting the informant at a nearby convenience store and

 providing narcotics to the informant. After observing this, law enforcement formed

 an opinion that Jones was procuring narcotics from 92 Gillespie Drive.

¶4 On April 19, 2018, Buncombe law enforcement officers arranged for the

 informant to purchase drugs from Jones for a third time. Prior to the scheduled
 STATE V. EDDINGS

 2021-NCCOA-590

 Opinion of the Court

 controlled purchase, a surveillance team followed Jones1 as he traveled to 92 Gillespie

 Drive. Jones remained at the residence for approximately ten minutes.

 Approximately two minutes after Jones left the residence, law enforcement

 attempted to perform a traffic stop. However, Jones did not stop his vehicle when

 law enforcement officers activated their emergency lights. While pursuing Jones, law

 enforcement officers “could see him eating something.” Officers “finally got him

 stopped at [a] gas station” and noticed “that there was something in his beard that

 looked like white powder.” It was determined later that Jones ingested narcotics.

¶5 Once law enforcement detained Jones, Detective Jason Sales (“Detective

 Sales”) of the Buncombe County Sherriff’s Office “wrote a search warrant” for the

 residence Jones had recently left. At the time, law enforcement did not know who

 resided at 92 Gillespie Drive, but Detective Sales “believe[ed] that [the house] [was]

 where [] Jones purchased his narcotics from, that this was, in fact, his source of

 supply.” “[A] search warrant was drafted, approved by a supervisor, [and] taken to a

 magistrate.”2

¶6 The search warrant application was comprised of six pages, and included: a

 1 There is no evidence in the record that Jones lived at 92 Gillespie Drive.
 2 A review of the transcript does not reveal that Detective Sales spoke with the

 magistrate. The transcript does not reveal who took the search warrant to the magistrate
 or if the officer who did so detailed law enforcement’s surveillance of Jones to the issuing
 magistrate. Thus, we presume that the issuing magistrate only considered the search
 warrant affidavit in determining probable cause existed.
 STATE V. EDDINGS

 2021-NCCOA-590

 Opinion of the Court

 broad description of items to be seized, including “any and all weapons,” “any and all

 items of personal property,” and any item that “could show information related to the

 manufacture, sale or distribution of controlled substances”; a list of three statutes

 law enforcement believed were violated; a description of the residence and directions

 from the Buncombe County Sheriff’s Office to 92 Gillespie Drive; and an one-and-a-

 half page affidavit prepared by Detective Sales. The search warrant affidavit

 provided, in relevant parts,

 While surveilling Jones, BCAT Agents were also able to
 follow him to 92 Gillespie Drive . . . , also believed to be the
 Source of Supply for Jones. On this date . . . BCAT Agents
 were able to once again surveille Jones and follow him to
 the 92 Gillespie Drive address. With the help of the
 Buncombe County Sheriff’s Community Enforcement
 Team (SCET), BCAT Agents were able to advise SCET
 when Jones would be leaving the residence of 92 Gillespie
 Drive and advised them the direction Jones would be
 traveling. . . . Jones was placed under arrest and a
 subsequent search for suspected heroin/fentanyl was
 conducted. In the search of the vehicle Deputies were able
 to locate [drugs]. . . . Based on my training and experience,
 and the facts as set forth in this affidavit, I believe that in
 the residence of 92 Gillespie Drive, there exists evidence of
 a crime and contraband or fruits of that crime, to include
 the use and sale of illegal narcotics. With the information
 of the officers and confidential sources involved in this
 case, the affiant respectfully requests of the court that a
 search warrant be issued.

 The search warrant was executed that same day.

¶7 At the time the search warrant was executed, several individuals — including
 STATE V. EDDINGS

 2021-NCCOA-590

 Opinion of the Court

 Defendant’s cousin, Defendant’s fiancé, an infant, and a teenaged girl — appeared to

 be either living at or visiting the residence. The search revealed digital scales,

 fentanyl, inositol powder, and a safe containing money and documents belonging to

 Defendant. Officers recovered a handgun with a holster and magazine from

 Defendant’s bedroom. Officers further recovered magazines and ammunition from

 various places inside the residence. The following day, Detective Sales obtained a

 second search warrant for the residence. During the second search, officers found a

 coffee can in the backyard containing packages of fentanyl.

¶8 Subsequently, on January 7, 2019, Defendant was indicted for possession with

 the intent to sell or deliver a Schedule II controlled substance, possession of fentanyl,

 possession of a firearm by a felon, and intentionally keeping or maintaining a

 dwelling for keeping or selling a controlled substance. On September 16, 2019,

 Defendant moved to suppress all evidence obtained during the searches of 92

 Gillespie Drive, arguing the issuing magistrate “erred in finding probable cause to

 issue the search warrant to search Defendant’s residence located at 92 Gillespie

 Drive.” Defendant argued that the search warrant lacked sufficient probable cause

 and violated Defendant’s rights under the Fourth and Fourteenth Amendments to

 the United States Constitution. Defendant’s motion was denied. In its order denying

 Defendant’s motion to suppress, the trial court made findings of fact which Defendant

 challenges. The relevant findings of fact are as follows:
 STATE V. EDDINGS

 2021-NCCOA-590

 Opinion of the Court

 2. The affidavit attached to the warrant is signed by
 Detective Jason B. Sales. In the affidavit he among other
 things asserts . . . [t]hat the task force with the aid of a
 confidential source of information recently purchased
 heroin/fentanyl from . . . Jones; [t]hat agents with task
 force were able to conduct surveillance of Mr. Jones on
 several occasions . . .; [t]hat during the surveillance they
 were also able to follow Mr. Jones to 92 Gillespie Drive,
 Leicester, NC, and based on their observations it was
 concluded that the source of supply of narcotics to Mr.
 Jones was coming from the property located at 92 Gillespie
 Drive . . .; [t]hat on April 19, 2018 the day of the application
 for the search warrant agents were again conducting
 surveillance on Mr. Jones and he again went to the
 property located at 92 Gillespie Drive; [t]hat immediately
 upon Mr. Jones leaving this property law enforcement
 followed Mr. Jones and based on other probable cause they
 quickly pulled Mr. Jones over and stopped him; [u]pon
 stopping Mr. Jones it was noted that he was ingesting a
 white powdery substance; . . . and [t]hat based on the
 training and experience of the detective he opined that
 there existed at the residence at 92 Gillespie Drive from
 which Mr. Jones had just left evidence of crime indicating
 the use and sale of illegal narcotics. This Court finds, as
 the magistrate did, the foregoing facts based on the
 affidavit attached to the search warrant.

 5. . . . The affidavit supports a drug dealer frequenting the
 particular residence to be searched, and that the drug
 dealer was found with a substantial amount of drugs
 immediately upon leaving that residence. . . . The affidavit
 attached to the search warrant is sufficient to establish
 probable cause for the issuance of the warrant.

 6. Based on the totality of the circumstances, the
 magistrate in this case had a substantial basis to conclude
 that probable cause existed to search . . . [D]efendant’s
 home at 92 Gillespie Drive . . . .

¶9 Defendant’s trial began on September 17, 2019, in the Buncombe County
 STATE V. EDDINGS

 2021-NCCOA-590

 Opinion of the Court

 Superior Court. On September 20, 2019, a jury convicted Defendant on all counts:

 possession with intent to sell or deliver fentanyl, possession of fentanyl, possession of

 a firearm by a felon, and intentionally keeping or maintaining a dwelling for keeping

 or selling a controlled substance. Judgments were entered upon the jury’s verdicts.

 Defendant timely gave notice of appeal in open court.

¶ 10 On appeal, Defendant argues the trial court erred in denying his motion to

 suppress and his motion to dismiss the charge of possession of a firearm by a felon.

 Defendant further contends the trial court erred in failing to instruct the jury on

 constructive possession of a firearm and in sentencing Defendant as a Class I felon.

 II. Discussion

¶ 11 Defendant first contends the trial court erred in denying his motion to suppress

 the evidence obtained through the search warrant, as the search warrant affidavit

 lacked probable cause for its issuance. After careful review, we agree and reverse the

 order denying Defendant’s motion to suppress, as the application affidavit is fatally

 defective.

¶ 12 Our review of a trial court’s denial of a motion to suppress is “strictly limited

 to determining whether the trial judge’s underlying findings of fact are supported by

 competent evidence, in which event they are conclusively binding on appeal, and

 whether those factual findings in turn support the judge’s ultimate conclusions of

 law.” State v. Cooke, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). “[T]he trial
 STATE V. EDDINGS

 2021-NCCOA-590

 Opinion of the Court

 court’s conclusions of law are reviewed de novo and must be legally correct.” State v.

 Pickard, 178 N.C. App. 330, 334, 631 S.E.2d 203, 206, disc. review denied, 361 N.C.

 177, 640 S.E.2d 59 (2006).

¶ 13 Pursuant to N.C. Gen. Stat. § 15A-244, an application for a search warrant

 must contain a statement of probable cause and “[a]llegations of fact supporting the

 statement [of probable cause]. The statements must be supported by one or more

 affidavits particularly setting forth the facts and circumstances establishing probable

 cause . . . .” N.C. Gen. Stat. § 15A-244(2)-(3) (2020); see also State v. McKinney, 368

 N.C. 161, 164, 775 S.E.2d 821, 824 (2015). The supporting affidavit “is sufficient if it

 supplies reasonable cause to believe that the proposed search for evidence of the

 commission of the designated criminal offense will reveal the presence upon the

 described premises of the objects sought and that they will aid in the apprehension

 or conviction of the offender.” State v. Campbell, 282 N.C. 125, 132, 191 S.E.2d 752,

 757 (1972) (quoting State v. Vestal, 278 N.C. 561, 576, 180 S.E.2d 755, 765 (1971)).

 “Probable cause ‘does not mean actual and positive cause,’ nor does it import absolute

 certainty.” Id. at 129, 191 S.E.2d at 755 (quoting 47 Am. Jur., Searches and Seizures,

 § 22). We review whether the issuing magistrate had “a ‘substantial basis for . . .

 conclud[ing]’ that probable cause existed.” State v. Arrington, 311 N.C. 633, 638, 319

 S.E.2d 254, 258 (1984) (citation omitted).

¶ 14 Whether the search warrant “affidavit is sufficient to show probable cause
 STATE V. EDDINGS

 2021-NCCOA-590

 Opinion of the Court

must be determined by the issuing magistrate rather than the affiant. This is

constitutionally required by the Fourth Amendment.” Campbell, 282 N.C. at 129,

191 S.E.2d at 756 (citing Johnson v. United States, 333 U.S. 10, 68 S. Ct. 367, 92 L.

Ed. 436 (1948)). The Fourth Amendment protects “[t]he right of the people to be

secure in their persons, houses, papers, and effects, against unreasonable searches

and seizures.” U.S. Const. amend. IV, XIV; see also State v. McKinney, 361 N.C. 53,

57-58, 637 S.E.2d 868, 871-72 (2006) (citations omitted); State v. Smith, 346 N.C. 794,

798, 488 S.E.2d 210, 213 (1997) (citations omitted). Under the Fourth Amendment,

a search warrant may be issued only “upon probable cause, supported by [o]ath or

affirmation, and particularly describing the place to be searched, and the persons or

things to be seized.” U.S. Const. amend. IV; see also State v. Allman, 369 N.C. 292,

293, 794 S.E.2d 301, 302-03 (2016); N.C. Const. art. I, § 20. The issuing magistrate

must “make a practical, common sense decision whether, given all the circumstances

set forth in the affidavit before him, . . . there is a fair probability that contraband or

evidence of a crime will be found in a particular place.” Arrington, 311 N.C. at 638,

319 S.E.2d at 257-58 (quoting Illinois v. Gates, 462 U.S. 213, 238, 103 S. Ct. 2317,

2332, 76 L. Ed. 2d 527, 548 (1983)) (quotation marks omitted). A magistrate may

make such determination upon “the totality of the circumstances,” drawing

“reasonable inferences” from the facts in an affidavit to support a finding of probable

cause. Id.; see also State v. Riggs, 328 N.C. 213, 221, 400 S.E.2d 429, 434 (1991).
 STATE V. EDDINGS

 2021-NCCOA-590

 Opinion of the Court

¶ 15 Factors “taken into account in the probable cause determination” include “[t]he

 experience and the expertise of the affiant officer . . . so long as the officer can justify

 his belief to an objective third party.” State v. Barnhardt, 92 N.C. App. 94, 97, 373

 S.E.2d 461, 462 (1988) (citation omitted). “The affidavit may be based on hearsay

 information and need not reflect the direct personal observations of the affiant; but

 the affidavit in such case must contain some of the underlying circumstances” to

 support the affiant’s belief that probable cause existed. Campbell, 282 N.C. at 129,

 191 S.E.2d at 755. The issuing magistrate may not rely on an affiant’s mere belief

 that probable cause existed, as such “purely conclusory” affidavits are inappropriate

 to further the impartial objective of the magistrate. Id. at 131, 191 S.E.2d at 756

 (citation omitted).

¶ 16 An affidavit “must establish a nexus between the objects sought and the place

 to be search[ed].” State v. McCoy, 100 N.C. App. 574, 576, 397 S.E.2d 355, 357 (1990)

 (citation omitted). “The existence . . . of a nexus is subject to the same totality of the

 circumstances inquiry as any other evidence establishing probable cause.” State v.

 Lovett, No. COA20-539, 2021-NCCOA-171, 2021 WL 1541478, at ¶ 25 (N.C. Ct. App.

 April 20, 2021) (unpublished) (citing McCoy, 100 N.C. App. at 577-78, 397 S.E.2d at

 357-58). Probable cause to search one location can be obtained from evidence at

 another location; however, such evidence must “implicate the premises to be

 searched.” State v. Washburn, 201 N.C. App. 93, 101, 685 S.E.2d 555, 561 (2009)
 STATE V. EDDINGS

 2021-NCCOA-590

 Opinion of the Court

 (quoting State v. Goforth, 65 N.C. App. 302, 308, 309 S.E.2d 488, 493 (1983)).

¶ 17 In determining “whether the search warrant affidavit at issue established

 probable cause,” we are guided by our Supreme Court’s decision in State v. Lewis, 372

 N.C. 576, 831 S.E.2d 37 (2019). In Lewis, the affidavit requested a search of a

 residence where a robber was arrested. Id. at 588, 831 S.E.2d at 45. However, the

 affidavit failed to properly implicate the residence when it did not detail the

 circumstances explaining law enforcement’s presence at the residence; did not

 include a conversation between a deputy and the defendant’s family member that

 would have revealed to the magistrate that the defendant lived at the residence; and

 did not mention that the defendant’s car was seen at the front of the house. Id.

 Though the affidavit listed a thorough account of the defendant’s incriminating

 behavior and law enforcement’s activities in apprehending him, the affidavit was

 found to be fatally defective. Id. at 588, 831 S.E.2d at 45-46. In holding the

 defendant’s motion to suppress should have been allowed, our Supreme Court

 reasoned the

 [d]efendant could have been present at [the residence] at
 the time of his arrest for any number of reasons. Absent
 additional information linking him to the residence or
 connecting the house with criminal activity, no basis
 existed for the magistrate to infer that evidence of the
 robberies would likely be found inside the home.

 Id. at 588, 831 S.E.2d at 45-46.
 STATE V. EDDINGS

 2021-NCCOA-590

 Opinion of the Court

¶ 18 In the present appeal, no evidence was presented at the suppression hearing3

 and the trial court’s order states it made its findings of fact “after review of the Court

 file and after review of the contested search warrant.” Moreover, “a trial court may

 not consider facts ‘beyond the four corners’ of a search warrant in determining

 whether a search warrant was supported by probable cause at a suppression

 hearing.” State v. Logan, ___ N.C. App. ___, 2021-NCCOA-311, ¶ 27 (quoting State v.

 Benters, 367 N.C. 660, 673-74, 766 S.E.2d 593, 603 (2014)). The search warrant

 affidavit is the only document contained in the record on appeal containing

 allegations of fact to support a statement of probable cause. The trial court found

 that law enforcement officers “immediately” followed Jones from the residence and

 “quickly pulled . . . Jones over and stopped him.” The affidavit attached to the search

 warrant does not reveal how much time passed once Jones left Defendant’s residence

 and the time Jones was apprehended with narcotics during a traffic stop. In fact, the

 affidavit is devoid of any facts regarding when or how Jones obtained narcotics or

 whether he had narcotics in his possession prior to traveling to Defendant’s residence.

 The affidavit merely states “Buncombe County Anti-Crime Taskforce Agents were

 able to advise SCET when Jones would be leaving the residence . . . and advised them

 the direction Jones would be traveling.” It is not clear whether SCET members

 3 “[I]t is axiomatic that arguments of counsel are not evidence.” State v. Collins, 345

 N.C. 170, 173, 478 S.E.2d 191, 193 (1996) (citations omitted).
 STATE V. EDDINGS

 2021-NCCOA-590

 Opinion of the Court

 observed Jones leave 92 Gillespie Drive, nor how much time passed between when

 Jones left the residence and when law enforcement officers began following his

 vehicle. The remaining pages of the search warrant application do not detail why law

 enforcement believed the enumerated statutes were violated or why law enforcement

 believed 92 Gillespie Drive was Jones’s source of supply. Therefore, we hold that the

 trial court’s finding that law enforcement officers “immediately” followed Jones is

 unsupported.

¶ 19 Likewise, the trial court’s finding that “the drug dealer was found with a

 substantial amount of drugs immediately upon leaving that residence,” is not

 supported by the four corners of the affidavit. Although the affidavit states law

 enforcement officers stopped Jones and observed him “attempting to ingest an

 unknown substance,” the affidavit does not provide any details as to how long law

 enforcement officers followed Jones, nor how long it took SCET officers to locate

 Jones’s vehicle after BCAT agents informed SCET of the direction of travel. “Before

 a search warrant may be issued, proof of probable cause must be established by facts

 so closely related to the time of issuance of the warrant so as to justify a finding of

 probable cause at that time.” State v. Lindsey, 58 N.C. App. 564, 565, 293 S.E.2d 833,

 834 (1982)

¶ 20 Detective Sales believed the residence “to be the Source of Supply for Jones,”

 but he did not provide the factual reason for his belief in the affidavit. While law
 STATE V. EDDINGS

 2021-NCCOA-590

 Opinion of the Court

 enforcement officers observed Jones at the property at least twice before, the affidavit

 does not detail how long Jones was inside the residence. Although the affidavit

 revealed a confidential informant purchased narcotics from Jones “in recent days”

 and that Jones was later observed at 92 Gillespie Drive, it is not clear how much time

 passed between the controlled purchase and when Jones was observed at Defendant’s

 residence. The affidavit is devoid of facts detailing the confidential informant’s

 conversation with Jones in which Jones stated he would need to obtain narcotics for

 the third controlled purchase. Thus, the trial court’s finding that “[t]he residence to

 be searched is thereby linked to the drug activity” remains uncorroborated.

¶ 21 The trial court included the following as a conclusion of law: “[t]he affidavit

 attached to the search warrant is sufficient to establish probable case for the issuance

 of the warrant.” While Detective Sales’s expertise and belief that 92 Gillespie Drive

 was Jones’s source of supply bears weight, the affidavit application must state facts

 sufficient to support a finding probable cause existed. See Barnhardt, 92 N.C. App.

 at 98, 373 S.E.2d at 462; see also Campbell, 282 N.C. at 131, 191 S.E.2d at 756. As

 the trial court noted, all that can be discerned from the plain language of the affidavit

 is that law enforcement observed Jones at 92 Gillespie Drive and apprehended Jones

 with narcotics “on the same date.” Notwithstanding the fact that Jones had visited

 the residence at least twice before, the record before this Court tends to show that

 Detective Sales did not provide any facts or circumstances that would lead an
 STATE V. EDDINGS

 2021-NCCOA-590

 Opinion of the Court

 objective magistrate to reasonably conclude that drugs or other illegal items could

 potentially be found at 92 Gillespie Drive. Jones “could have been present at [the

 residence] . . . for any number of reasons.” Lewis, 372 N.C. at 588, 831 S.E.2d at 45-

 46. Probable cause cannot be shown by affidavits which are purely conclusory

 without detailing any of the underlying circumstances upon which the conclusion is

 based. Thus, we hold the affidavit, as stated in this case, does not provide sufficient

 facts and circumstances to supply a magistrate with a substantial basis to infer

 probable cause. Because we conclude the trial court erred in denying Defendant’s

 motion to suppress, we do not need to address his remaining arguments on appeal.

 III. Conclusion

¶ 22 After careful review, we hold the search warrant affidavit did not provide a

 sufficient basis for a finding of probable cause to search Defendant’s residence. We

 reverse the order denying Defendant’s motion to suppress and grant Defendant a new

 trial.

 REVERSED AND REMANDED FOR NEW TRIAL.

 Judge COLLINS concurs.

 Chief Judge STROUD dissents by separate opinion.
 No. COA20-758 – State v. Eddings

 STROUD, Chief Judge, dissenting.

¶ 23 Because I conclude the search warrant affidavit provides a sufficient basis for

 probable cause to search defendant’s residence, I would affirm the order denying

 defendant’s motion to suppress; therefore, I dissent.

¶ 24 I agree with the majority that the question before us is whether there was

 probable cause for the issuance of the search warrant.

 With regard to a search warrant directed at a residence,
 probable cause means a reasonable ground to believe that
 the proposed search will reveal the presence upon the
 premises to be searched of the objects sought and that
 those objects will aid in the apprehension or conviction of
 the offender.

 State v. Bailey, 374 N.C. 332, 335, 841 S.E.2d 277, 280 (2020) (citation and quotation

 marks omitted). Bailey further explains,

 This standard for determining probable cause is flexible,
 permitting the magistrate to draw reasonable inferences
 from the evidence in the affidavit supporting the
 application for the warrant. That evidence is viewed from
 the perspective of a police officer with the affiant’s training
 and experience, and the commonsense judgments reached
 by officers in light of that training and specialized
 experience. Probable cause requires not certainty, but only
 a probability or substantial chance of criminal activity. The
 magistrate’s determination of probable cause is given great
 deference and after-the-fact scrutiny should not take the
 form of a de novo review.

 Id. (emphasis in original) (citation, quotation marks, and ellipses omitted).

¶ 25 Here, the search warrant application included six pages of attachments

 detailing what was to be seized, the crimes Detective Sales believed were taking
 STATE V. EDDINGS

 2021-NCCOA-590

 Stroud, CJ., dissenting

place, a specific description of the location to be searched which included a picture of

a map with street names, and Detective Sales’s affidavit. The affidavit stated in part:

 The applicant swears or affirms to the following facts to
 establish probable cause for the issuance of a search
 warrant

 I, the affiant Jason B. Sales, am a sworn law enforcement
 officer with the Buncombe County Sheriff’s Office. I am an
 Agent assigned to the Buncombe County Anti-Crime Task
 Force Division, tasked with investigating violations of
 criminal law and narcotic investigations. I have been a
 sworn Deputy for 16 years. I am currently a member of the
 Sheriff’s Special Response Team (SRT) and a member of
 the Buncombe County Sheriff’s Office Crisis Intervention
 Team (CIT). Prior assignments with this agency have
 included duties within the Special Investigations Division
 (Sexual Related Crimes), Property Crimes Division, Patrol
 Division, Court Security Division, Transportation Division,
 and in the Detention Center. I have had over 1,800 hours
 training in Law Enforcement related courses. I have had
 training in investigative processes, legal updates,
 execution of search warrants, resolution of barricaded
 suspects, and currently certified through LELA for
 Clandestine Labs related to, but not limited to
 Methamphetamine, LSD, MDMA, and Fentanyl. I hold a
 vocational diploma in Criminal Justice with AB-Tech.

 The information set forth in this affidavit is the result of
 my own investigation or has been communicated to me by
 others involved in this investigation.

 In recent days the Buncombe County Anti-Crime Taskforce
 (BCAT) with the aid of a confidential source of information
 (CSI) have purchased an amount of heroin/fentanyl from
 Robert Mitchell Jones (12/31/1959).

 With information received from the CSI, BCAT Agents
 STATE V. EDDINGS

 2021-NCCOA-590

 Stroud, CJ., dissenting

were able to surveille Jones on several occasions and
observe him make what were believed to be narcotics
transactions in the Leicester Community of Buncombe
County. While surveilling Jones, BCAT Agents were also
able to follow him to 92 Gillespie Drive, Leicester NC
28748, also believed to be the Source of Supply for Jones.

On this date, Thursday, April 19, 2018 BCAT Agents were
able to once again surveille Jones and follow him to the 92
Gillespie Drive address. With the help of the Buncombe
County Sheriff’s Community Enforcement Team (SCET),
BCAT Agents were able to advise SCET when Jones would
be leaving the residence of 92 Gillespie Drive and advised
them the direction Jones would be traveling. With the
SCET team in place, BCAT Agents observed Jones leave 92
Gillespie Drive and turn right onto New Leicester Hwy.
BCAT Agent informed SCET the direction of travel and the
type of vehicle Jones was operating (Maroon/Red Nissan
extra cab 2wd pick-up). SCET was able to locate the vehicle
and form their own basis for probable cause to effect a
vehicle stop for Jones. SCET was able to determine their
own probable cause for the stop and initiate said stop.
Once the blue lights were activated, Jones was observed
attempting to ingest an unknown white powdery
substance. The traffic stop was conducted in the parking
lot area of 3148 New Leicester Hwy, BP Service Station. At
the traffic stop Jones exited his vehicle and [was]
approached by Deputies. Deputies observed a plastic
baggie sticking out of Jones[’s] rear pocket and was
motioning to the baggie. Deputies went to retrieve the
baggie and some of the white powdery substance went
airborne into the Deputies[’s] face. Jones was placed under
arrest and a subsequent search for suspected
heroin/fentanyl was conducted. In the search of the vehicle
Deputies were able to locate three (3) individual wrapped
foil packs containing approx. two (2) grams of suspected
heroin/fentanyl each inside the vehicle. EMS was called to
the traffic stop and were able to observe Jones and the
Deputy exposed to the suspected heroin/fentanyl.
 STATE V. EDDINGS

 2021-NCCOA-590

 Stroud, CJ., dissenting

 Based on my training and experience, and the facts as set
 forth in this affidavit, I believe that in the residence of 92
 Gillespie Drive, there exists evidence of a crime and
 contraband or fruits of that crime, to include the use and
 sale of illegal narcotics. With the information of the officers
 and confidential sources involved in this case, the affiant
 respectfully requests of the court that a search warrant be
 issued.

 According to the majority opinion, the main deficiency in the affidavit appears to be

 the passage of time both (1) in the prior days when law enforcement had observed

 what they believed to be illegal drug transactions and (2) from the time Jones left

 defendant’s house until he was stopped and apprehended with narcotics.

¶ 26 The affidavit notes that the prior purchases from Jones were made “[i]n recent

 days[,]” and it is sufficiently specific enough to note the transactions as “recent[.]” I

 am not aware of any case law requiring search warrants to provide more specific

 details than noting “in recent days[,]” particularly when as here, there are many other

 specific details in the affidavit to test its veracity. See generally State v. Ellington, 18

 N.C. App. 273, 196 S.E.2d 629, aff’d, 284 N.C. 198, 200 S.E.2d 177 (1973)

 (determining that an affidavit provided reasonable cause to search luggage where it

 noted information had been obtained “recently”). In later interpreting Ellington, this

 Court stated in State v. Brown,

 In State v. Ellington, 284 N.C. 198, 200 S.E.2d 177
 (filed 14 November 1973), the Supreme Court refused to
 hold that the following language in an affidavit was
 STATE V. EDDINGS

 2021-NCCOA-590

 Stroud, CJ., dissenting

 insufficient under Aguilar v. Texas, supra, to establish the
 reliability of a confidential informant:
 “Deputy Simmons advises that his informer is
 100% reliable, and that information obtained
 from this same informant recently led to the
 confiscation of 120,000 Barbituates recently
 in New York City.”
 The obvious distinction between the affidavit in Ellington,
 supra, and the affidavit before us is that the former
 refers—although generally—to a specific instance of
 information whereas the latter refers only to a general
 pattern of information. Nevertheless, we hold that this
 affidavit is sufficient under Aguilar v. Texas, supra, and
 State v. Ellington, supra.
 “[T]he Fourth Amendment’s commands, like
 all constitutional requirements, are practical
 and not abstract. If the teaching of the Court’s
 cases are to be followed and the constitutional
 policy served, affidavits for search warrants,
 such as the one involved here, must be tested
 and interpreted by magistrates and courts in
 a commonsense and realistic fashion. They are
 normally drafted by nonlawyers in the midst
 and haste of a criminal investigation.
 Technical requirements of elaborate specificity
 once exacted under common law pleadings
 have no proper place in this area. A grudging
 or negative attitude by reviewing courts
 toward warrants will tend to discourage police
 officers from submitting their evidence to a
 judicial officer before acting.” State v.
 Ellington, supra, at 204, 200 S.E.2d at 181
 [quoting United States v. Ventresca, 380 U.S.
 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965)].

 State v. Brown, 20 N.C. App. 413, 415, 201 S.E.2d 527, 529 (1974) (emphasis added).

¶ 27 As to the timing of when Jones was stopped, a plain reading of the affidavit
 STATE V. EDDINGS

 2021-NCCOA-590

 Stroud, CJ., dissenting

 indicates Jones was stopped very quickly after driving away from defendant’s home.

 In denying the motion to suppress, the trial court fairly summarized the affidavit in

 finding “[t]hat immediately upon Mr. Jones leaving this property law enforcement

 followed Mr. Jones and based on other probable cause they quickly pulled Mr. Jones

 over and stopped him[.]” (Emphasis added). The majority’s own summary of the facts

 indicates that it was approximately two minutes from when Jones left defendant’s

 residence until law enforcement attempted to stop him.

¶ 28 Further, the affidavit notes that law enforcement was in place already aware

 of “the direction Jones would be traveling” so that they could quickly stop him, and

 Jones had only made one right turn before the stop. While the local magistrate was

 likely aware of the proximity of the locales mentioned in the affidavit, I take judicial

 notice that defendant’s house is 2.8 miles from the address where Jones was stopped,

 and thus assuming normal driving speeds, the time to travel the distance would be

 at most a few minutes. See N.C. Gen. Stat. § 8C-1, Rule 201 (2019) (“A judicially

 noticed fact must be one not subject to reasonable dispute in that it is either (1)

 generally known within the territorial jurisdiction of the trial court or (2) capable of

 accurate and ready determination by resort to sources whose accuracy cannot

 reasonably be questioned. . . . A court may take judicial notice, whether requested or

 not.”); see generally State v. Brown, 221 N.C. App. 383, 387, 732 S.E.2d 584, 587 (2012)

 (taking “judicial notice of the driving distance between White’s residence and
 STATE V. EDDINGS

 2021-NCCOA-590

 Stroud, CJ., dissenting

 defendant’s girlfriend’s apartment as being in excess of 27 miles. In State v.

 Saunders, 245 N.C. 338, 342, 95 S.E.2d 876, 879 (1957), our Supreme Court held that

 it was appropriate for the trial court to take judicial notice of the distance in miles

 between cities in Virginia and North Carolina.”). I believe the trial court’s

 characterization of the stop as “immediat[e]” was accurate given “a commonsense and

 realistic” interpretation rather than the “[t]echnical [interpretation of the]

 requirements [with] elaborate specificity” which is discouraged. Brown, 20 N.C. App.

 at 415, 201 S.E.2d at 529.

¶ 29 A “commonsense” reading of the search warrant affidavit, Bailey, 374 N.C. at

 335, 841 S.E.2d at 280, indicates that due to his extensive training and experience as

 a law enforcement officer Detective Sales was familiar with the circumstances

 generally surrounding illegal drug sales; via a confidential informant Detective Sales

 was aware Jones had recently been dealing in illegal drugs; other law enforcement

 officers surveilled Jones “on several occasions” conducting what they believed were

 narcotic transactions, including at defendant’s home; law enforcement observed

 Jones enter defendant’s home; immediately after leaving defendant’s home, law

 enforcement officers, based on other established probable cause attempted to stop

 Jones and saw him ingesting a white substance; a search of Jones’s vehicle revealed

 many illegal drugs. The affidavit establishes, “a reasonable ground to believe that

 the proposed search will reveal the presence upon the premises to be searched of the
 STATE V. EDDINGS

 2021-NCCOA-590

 Stroud, CJ., dissenting

 objects sought and that those objects will aid in the apprehension or conviction of the

 offender.” Id.

¶ 30 Accordingly, I would affirm the trial court’s order determining there was

 probable cause for issuance of the search warrant. Thus, I dissent.